# Delbert's Appeal, No. 1.

1. Where a trustee has active duties to perform, and by the terms of a will it is apparent that the main intent of the testator was to create an active trust, for a lawful purpose, this intent will not be defeated because he also included therein a void trust for the separate use of his daughters who were unmarried.

2. Testator devised an eighth of his estate to each of his daughters for their lives, and after their decease to all their children then living, and the issue of such of them as may then be dead, their heirs and assigns for ever, in equal parts, such issue taking and dividing among themselves such share only as their deceased parents would have taken if living; provided that the portions of his estate thus devised should remain during the lives of the daughters, respectively, in the care and management of his executors, in trust, to receive and pay over the income to his said daughters for their sole and separate use, free from any liability for the debts of husbands: *Held,* that the gifts to the daughters were restricted to their lives, with a contingent remainder in fee to the

[Delbert's Appeal, No. 1.]

children of each, living at the time of her death, and to the issue of such as may be then deceased, leaving such issue.

3. *Held, further*, that it was the intent of the testator to create a trust to preserve the *corpus* of the estate for those in remainder, and this intent was not to be defeated by the provisions for the separate use of the daughters, which was but an incident and not the main purpose of the trust.

February 12th 1877.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.  WILLIAMS, J., absent.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1875, No. 115.

This was the appeal of Simon Delbert and others, from the decree of the court revoking the appointment of the Fidelity Insurance, Trust and Safe Deposit Company, as trustee under the will of Frederick Gaul, Sr., deceased.

Frederick Gaul, Sr., died in June 1831, leaving a will, dated August 1st 1825, and seven children, Frederick, William, Jacob, Martin and Catharine Gaul, Mary, afterwards Mary Smith, Elizabeth, afterwards Elizabeth Stiles, and a widow, who died in 1836. By his will he gave and devised an annuity of $2000 to his wife out of his income, and of the balance of said income, one-eighth to each of his children (Joseph being then alive, but dying before testator).  The share of his son Jacob he gave to his executors, to apply the same, in their discretion, to the support of Jacob for life, not to be liable for his debts, and at his decease, then to his children, if any.  The shares of his daughters he also gave to his executors, to be paid to each of them during her life, and at her decease, to her children, if any.

After the death of his wife he gave one-eighth of his estate to each of his said children, the shares of Jacob and his daughters to be held by his executors upon the same trusts and in the same way as the income ; the terms of the will being as follows : "Another eighth part thereof to my said daughter Mary, for and during all the term of her natural life, and after her decease to all her children then living, and the issue of such of them as may be then dead, their heirs and assigns for ever, in equal parts, such issue taking, and among themselves equally dividing, such part and share only as their deceased parents would have taken if living ; another eighth part thereof to my said son Jacob, for and during all the term of his natural life, and after his decease, then to all his children then living, and the issue of such of them as may be then dead, their heirs and assigns for ever, in equal parts, such issue taking, and among themselves equally dividing, such part and share only as their deceased parent would have taken if living."

An eighth part was given to Elizabeth and Catharine in like terms as those applied to Mary.  The will then proceeded : "Provided always, and it is my mind and will that the parts and portions of my estate hereinbefore devised to and for the benefit of

my said daughters, respectively, shall be and remain in the care and management of my said executors, and the survivor of them, for and during the term of their natural lives, respectively, to receive· the rents and income of the real estate, and to place out and continue at interest the personal estate, or to invest the same in some of the personal stocks or securities producing an interest or dividends, and to receive the interest and dividends arising therefrom when and as the same shall become due, and from time to time, when and as the same shall be received, to pay over the same to my said daughters, respectively, to whom the same may belong, into their own hands, for their sole and separate use, without being in any wise subject or liable to the debts, control or interference of their husbands, respectively, and their receipt alone, whether *covert* or *sole*, shall be good and available in law. And, provided also, and it is my mind and will that the part and share of my estate hereinbefore devised for the benefit of my said son Jacob, shall be and remain in the care and management of my said executors, as his trustees, the interest and income of which for and during all the term of his natural life, I direct to be paid to him or to be applied by them at their option, for his support and maintenance, so that the same shall not be liable to his disposal, or subject to the payment of his debts."

William Gaul, Frederick Gaul, Jr., and the testator's wife Clarissa and the survivors or survivor of them, were appointed the executors and trustees under this will. The widow, as observed above, died in 1836. William Gaul, one of the executors and trustees, died in 1868, leaving a will dated February 2d 1867, wherein he appointed Sarah Gaul, Simon Delbert, George H. Oberteuffer and Peter L. Snyder executors and trustees. F. Gaul, Jr., the surviving trustee, died in April 1871, leaving a will appointing his daughter, Mary A. Gaul, executrix. Jacob Gaul died March 9th 1871, intestate and unmarried; and Catharine Gaul, about seventy-six years of age, was living and unmarried when this proceeding commenced.

In 1871 Simon Delbert and George H. Oberteuffer, surviving executors of William Gaul, deceased, and the personal representatives of said William Gaul, filed a petition which, after a recital of the above facts, set forth, that the shares of said Jacob and Catharine, which were left in trust by the will of Frederick Gaul, Sr., for the lives of each, to William Gaul and Frederick Gaul, have now increased to an amount exceeding one hundred and seventy thousand dollars; that after·the year 1852, Henry Stiles acted as trustee, in conjunction with Frederick Gaul, but at his death, in 1863, James S. Huber assumed the duties of trustee, and has acted up to the present time; that there is not now in existence any trustee appointed by the will of Frederick Gaul, Sr.; that James S. Huber, acting trustee, has never been appointed by deed, will or by this court, and has never given any security, although he holds

in his possession and control all the securities of the estate of Jacob and Catharine Gaul, to the amount above named, and in which your petitioners are interested as heirs and devisees.

The petitioners, therefore, pray that the court will appoint the Fidelity Insurance, Trust and Safe Deposit Company as trustee, in lieu and stead of said trustees, deceased, under the will.

The court granted the petition, as prayed for, on the 20th of May 1871, and on the 27th of the same month Catharine Gaul, by her next friend Mary Smith, Mary Smith in her own right, and others, who comprised all those interested in the estate except the representatives of William Gaul, deceased, petitioned the court to revoke the appointment of the "Fidelity company," because, 1, the trusts created by the will of Frederick Gaul, Sr., were executed, and, 2, that consequently the court had no jurisdiction.

At the hearing, which was upon bill and answer, Allison, P. J., delivered the following opinion:—

"Petition 6, presented in the William Gaul interest, asked for the appointment of the Fidelity Trust Company as trustee under the will of Frederick Gaul, Sr., in place of Frederick and William, deceased, which was granted.

"And petition No. 7 prays that this appointment be vacated. This application is in behalf of all but the representatives of William Gaul, and rests upon two grounds:—

"First, a want of jurisdiction; there being, as contended, no vacancy, because no subsisting trust. Jacob was dead, and the trust as to him died with him. Catharine's trust is a *feme covert* trust, and as she is unmarried, old and insane, the trust as to her is executed. Mary Smith's trust became executed on her becoming a widow; she has children, and William Gaul's executors, therefore, have no interest. The executors of Frederick Gaul, surviving trustee, hold the legal title to the chattel property of the estate, and can maintain possession until required to account; and as these trusts are executed, and not executory trusts, equity has no jurisdiction: Baker *v.* Biddle, 1 Bald. 394; Ex parte Conrad, 2 Ash. 527. This last case is rested mainly on the authority of Carlisle's Appeal, 9 Watts 331, in which the doctrine is clearly stated, that under our Acts of Assembly relating to trusts and trustees, only where the trusts are active, requiring personal attention or active duty, or the exercise of a power by a trustee, will trustees be appointed.

"This renders it immaterial whether the appointment was improvidently made or not. Holding that the trusts were dry trusts, the Fidelity company ought not to have been appointed, and the appointment is therefore revoked."

From this decree this appeal was taken.

*Charles S. Pancoast, G. W. Biddle* and *W. W. Juvenal,* for

appellants.—The gifts to the daughters are expressly restricted to their natural lives, with a contingent remainder in fee to the children of each, living at the time of her death, and the issue of such as may then be deceased, leaving such issue. These remainders come under the fourth class of Mr. Fearne; "where a remainder is limited to a person not ascertained, or not in being at the time when such limitation is made." The person or persons are not ascertained, until the death of the daughters, who will fill the description of "children then living," &c.: Huber's Appeal, 30 P. F. Smith 348; Robins *v.* Quinliven, 29 Id. 333; Rupp *v.* Eberly, Id. 141.

The testator imposed active duties upon the trustees, to continue during the whole time of the life-estate he had first given; and whilst he added a direction that the income shall not be liable for the debts of the husbands of these life-tenants, there is, from the gift of this limited interest and the gift over to others afterwards, apparent on the face of the will, a sound reason for holding that this trust was not a trust for mere separate use, but was really intended to be what he expressed it should be, for the care and management of his estate during the lives of the first takers. Even where the trust is not active the legal estate will remain in the trustees so long as it is necessary to preserve the estate itself, as to protect a married woman, or to preserve contingent remainders : Dodson *v.* Ball, 10 P. F. Smith 494; Barnett's Appeal, 10 Wright 399; Pullen *v.* Rianhard, 1 Whart. 514.

*R. L. Ashhurst* and *Chapman Biddle,* for appellees.—The court had no jurisdiction, as the estates of which the Fidelity company were appointed the trustees were not devised or bequeathed under the will, upon any active trusts, or for any special lawful purpose requiring the management of a trustee; and the beneficiaries had, therefore, legal estates at the time of the appointment.

The trusts as to Catharine and Mary were *feme covert* trusts ; and as Catharine was unmarried and was not contemplating marriage at the time, and as Mary was then discovert, the trusts, if ever effective, were certainly then invalid.

That the intention of the testator in creating the trusts of his daughters' shares was to protect them against coverture, clearly appears. What else is there to keep the trust alive ? There are no duties to be performed by the trustees but such as are purely ministerial; they have no duty of conveying or dividing the property on the death of the daughters, nor is there any purpose expressed except to preserve the property during coverture, and this purpose is clearly disclosed in the use of the words "sole and separate" by the testator: Ogden's Appeal, 20 P. F. Smith 507; Yarnall's Appeal, Id. 339; Dodson *v.* Ball, 10 Id. 494.

If coverture is the purpose of a trust, active duties of manage-

[Delbert's Appeal, No. 1.]

ment imposed on the trustees are looked upon as merely incidental, and although a trust might otherwise be active, yet if the purpose appear to be to guard against future coverture—a purpose altogether unlawful—the active duties to be performed by the trustees will not save the trust from falling, or keep it alive after an existing coverture has ceased. See cases above cited.

There was no necessity for the appointment of a trustee for the mere purpose of transmitting the legal title to contingent remaindermen, because a trustee already existed in Mary Ann Gaul, heir-at-law of Frederick Gaul, Jr., the surviving trustee: Jenks v. Backhouse, 1 Binn. 91; Carlisle's Appeal, 9 Watts 331; Baird's Appeal, 3 W. & S. 459.

Mr. Justice PAXSON delivered the opinion of the court, March 28th 1877.

The only error assigned upon this record is to the decree of the court below, revoking the appointment of the Fidelity Insurance, Trust and Safe Deposit Company as trustees under the will of Frederick Gaul, Sr., deceased, in place of William and Frederick Gaul, deceased, trustees. Said appointment was revoked upon the ground that the trusts were mere dry trusts requiring no personal attention, nor the performance of any active duty on the part of the trustee.

We think it is very clear that under the will of Frederick Gaul, senior, deceased, the gifts to the daughters are expressly restricted to their natural lives, with a contingent remainder in fee to the children of each living at the time of her death, and to the issue of such as may then be deceased, leaving such issue. Here is certainly a duty on the part of the trustee to preserve the *corpus* of the estate for those entitled in remainder. There were also active duties to perform. By the terms of the will the property is directed to "remain in the care and management of the executors, and the survivor of them, for and during the natural lives of the daughters, respectively, to receive the rents and to continue at interest and invest the personal estate in some of the personal stocks or securities, producing an interest or dividend, and to receive the interest and dividend, and from time to time to pay over the same to the daughters to whom the same may belong, into their own hands, for their sole and separate use, without being subject or liable to the debts or their husbands," &c. The learned judge of the Orphans' Court evidently regarded this clause of the will as creating a separate use trust. The concluding sentence of the paragraph cited evidently does create such a trust. But an examination of the entire will shows that the separate use was not the main or controlling feature of the trust. It was but an incident. Had it been a separate use trust and nothing more, it would undoubtedly fall under the authority of Dodson v. Ball, 10 P. F. Smith 494; Yarnall's

Appeal, 20 Id. 339; Ogden's Appeal, Id. 507. But where an active trust is created, and the intent appears to be that it shall continue for a life or other limited period, without regard to coverture, then the trust is sustained: Bacon's Appeal, 7 P. F. Smith 504; Earp's Appeal, 25 Id. 125; Ashhurst's Appeal, 27 P. F. Smith 464; Ash's Appeal, 30 Id. 497. We think the trust in this estate falls within the latter class, and that a trustee is necessary to carry out the purposes contemplated by the testator. It will be the duty of the Orphans' Court to make such an appointment.

The decree is reversed, and a *procedendo* awarded; the costs of this appeal to be paid by the appellees.