## Sauerbier's Estate.

*Will—Conversion—Real estate—Partition.*

Testator by his will gave a house and lot to his wife for life, and charged a certain annual amount on two other properties for her use. He further directed in his will as follows: "I direct and order my executor to sell my real and personal property what is not in the dower aforesaid." He also directed that in case his executor should not sell the real estate charged with the dower before the decease of the wife, the executor should collect the rents. By a codicil he provided that the real estate which had been devised to his wife or charged in her favor, should not be sold within five years after his decease, and then only if his executor should deem it advisable, he then continued: "I do hereby authorize and empower my said

executrix to sell at public or private sale, the said real estate, at her discretion, after the expiration of five years from my decease. . . . I order and direct that as soon after my decease as in the judgment of my said executrix it shall be practicable, she shall sell at public or private sale, all my real estate not located" as above. *Held*, that there was no conversion of the real estate devised for life to his wife, or charged in her favor, and as to it partition proceedings might be maintained.

Argued March 5, 1902. Appeal No. 48, Jan. T., 1902, by Mary Ann Sauerbier, from decree of O. C. Berks Co., Sept. T., 1901, No. 47, awarding partition in the Estate of Jacob Sauerbier, Deceased. Before McCollum, C. J., Dean, Fell, Mestrezat and Potter, JJ. Affirmed.

Petition for partition.

Bland, P. J., filed the following opinion:

In the matter of the petition of Charles A. Devlan, praying for an inquest to make partition of certain real estate, situate between Penn and Court and Fifth and Sixth streets, Reading, of which the decedent died seized.

Jacob Sauerbier, the decedent, died testate on April 17, 1878, seized of the real estate described in the petition, and also of a certain valuable tract of real estate located on South Eleventh street, Reading, on which was erected a hat factory.

The real estate located between Penn and Court streets and Fifth and Sixth streets was in the heart of the city, at its business center, where real values were most likely to rise with its growth, and consisted of a thirty-foot lot fronting on Penn street, on which was erected a three-story building, having a front of thirty feet, on the first floor of which there were two storerooms, with dwelling apartments above the storerooms; and two dwelling houses fronting on Court street, each fifteen feet in front—the dwelling houses being numbered 518 and 520.

At the time of his decease the decedent and his wife, Susanna occupied the dwelling apartments over the stores fronting on Penn street. By his will, dated January 25, 1870, and a codicil thereto, dated June 29, 1875, both of which, after his decease, were admitted to probate, he directed, as to his real estate, as follows: by his will: "I give, etc., unto my dear wife Susanna E. Sauerbier, the house and yard, 520, fifteen

feet, fronting on Court street . . . . to live in and have possession of during her lifetime."

" I give, etc., . . . . unto my dear wife . . . . the annual sum of six hundred dollars to be paid to her in quarterly yearly payments . . . . during her natural life, for her maintenance and support, the annual amount so bequeathed to my said wife shall be, during said term, a lien or charge of dower upon my Penn street property, situate on the north side of Penn street, Nos. 515 and 517, between Fifth and Sixth streets . . . . and in case my executor shall see proper to sell my real estate or property before the decease of my said wife, I order and direct that the sum of ten thousand dollars out of the purchase money, shall then remain in said property . . . . and the interest thereon accruing, be collected from time to time, by my executor and paid over to my wife as aforesaid; but in case my executor do not sell said real estate or property, before the decease of my wife, my said executor shall from time to time, collect the rents of said real estate and property, and thereout pay said quarterly yearly payments to my said wife, as aforesaid."

" I further direct and order my executor to sell my real and personal property what is not in the dower aforesaid. Shall however use all proper means to sell my real and personal property to the best advantage and for the best price that can be gotten for the same," etc.

" After all my real and personal property is disposed of as aforesaid, and thereout all my just debts and other reasonable expenses are paid and satisfied, I give and bequeath the net balance unto my five children, one-fifth to Catharine M. Myers; one-fifth to Elizabeth R. Devlan; one-fifth in trust for John D. Sauerbier; one-fifth to Mary Ann Sauerbier; and one-fifth to George M. Sauerbier."

By his codicil he provided: " Second. It is my will, and I do hereby direct, that my real estate situate between Penn and Court and Fifth and Sixth streets, in the city of Reading, be not sold or in any way disposed of within five years after my decease, and then only if my said executrix shall deem it advisable. And I do hereby authorize and empower my said executrix to sell at public or private sale, the said real estate at her discretion, after the expiration of five years from my decease."

" Fourth. I order and direct that as soon after my decease as in the judgment of my said executrix it shall be practicable, she shall sell, at public or private sale, all my real estate not located between Penn and Court and Fifth and Sixth streets, in the city of Reading. . . . I further direct that she shall sell and convert into money, all my personal property, except such household furniture as may be retained by my wife Susanna in accordance with the terms of my will. I also direct that my executrix shall, immediately after my decease, convert into money all bills, notes, bonds, mortgages, stocks, and all other securities or evidences of debt of which I may be possessed at my decease. After the expiration of five years from my decease, my executrix may sell all my real estate situate between Penn and Court and Fifth and Sixth streets in the city of Reading, as I have above provided ; but the said property on Court street, No. 520, shall not be sold until after the decease of my wife Susanna."

" Fifth. Immediately after the conversion of any part of my estate, as aforesaid, into money, or as soon thereafter as it may practically be done, I direct my executrix to make division of the net proceeds into five equal parts," which parts he bequeathed as follows : One fifth to Catharine M. Myers ; one fifth to Elizabeth R. Devlan ; one fifth to Mary Ann Sauerbier; one fifth to Mary Ann Sauerbier, in trust for George M. Sauerbier, his wife and children ; and one fifth to Mary Ann Sauerbier, in trust for John D. Sauerbier, for life, with remainder to his lawful children ; and in default of children of John, to the children of the testator.

Susanna Sauerbier, decedent's widow, died November 2, 1895, and John D. Sauerbier, son of decedent, survived the decedent, and died, unmarried and without issue. Mary Ann Sauerbier and George M. Sauerbier, children of the decedent, are still living. Catharine M. Myers is deceased, leaving to survive her the following children : Frank Myers, Henry Myers, William Myers, Kate O. Myers, Sallie Myers and Mary Myers, the last named two, Sallie and Mary, having since died, unmarried, intestate and without issue. Elizabeth R. Devlan was, at the time the will of the decedent was made, a widow with two children, the petitioner, Charles A. Devlan and Bertha J. Devlan, now Bertha J. Hackney. She was subsequently intermarried

with Charles L. Maxwell, and died in 1893, domiciled in the state of New Jersey, leaving to survive her a child of that marriage, Bessie R. Maxwell, who is now Bessie R. Reynolds and her said husband, Charles L. Maxwell, who is still living.

Mary Ann Sauerbier, George M. Sauerbier, by his trustee, Mary Ann Sauerbier; Kate O. Myers, William S. Myers, Charles L. Maxwell, Bessie R. Reynolds and George M. Sauerbier have filed an answer to the petition, denying the right of the petitioner to partition, for the reason, as respondents aver, that the will of decedent works a conversion of the real estate described in the partition into money for distribution among the persons interested under the will; and the question is whether that is the effect of the will and codicil.

If the real estate is held converted from the death of the testator, the petitioner has no interest; for, as his mother was domiciled in the state of New Jersey at her death, in 1893, and died intestate, her share of the proceeds would, under the law of that state, belong to her surviving husband, Charles L. Maxwell.

In considering and passing upon the question, the following principles of law must be kept in mind.

1. The reason, mode of operation and limitation of the doctrine of conversion are stated by Mr. Justice MITCHELL thus: " The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done, shall be treated as if done already. It is a fiction, therefore, invented to sustain and carry out the intention of the testator or settler, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion; the property remains all the time in fact, realty or personalty as it was; but for the purpose of the will as it may be necessary, and only so far it is treated in contemplation of law as if it had been converted. Few testators have any knowledge of the doctrine, or any actual intent to change the nature of their property, except when and to the extent that may be required to carry out the special purpose of the will. The presumption, therefore, no matter what the form of words used, is always against conversion, and even where it

is required it must be kept within the limits of actual necessity:"
Yerkes v. Yerkes, 200 Pa. 423.

2. In Hunt's and Lehman's Appeals, 105 Pa. 141, the Supreme Court said: "It ought to be settled, by this time, that in order to work a conversion there must be either, (1) a positive direction to sell; or, (2) an absolute necessity to sell, in order to execute the will; or, (3) such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money."

3. In order to work a conversion, the direction to sell must be positive and explicit. It must not rest in the discretion of the executor, nor depend upon contingencies. A direction to sell upon a future contingency does not effect an equitable conversion until an actual sale: Jones v. Caldwell, 97 Pa. 45.

4. Unless there be an imperative direction to sell, irrespective of contingencies and independent of discretion, conversion will not take place until the sale is actually made: Peterson's Appeal, 88 Pa. 403.

5. The blending of real and personal estate by the testator in his will is not of much significance, unless it clearly appears that he intended thereby to create a fund raised out of both real and personal estate, and to bequeath such fund as money: Perot's Appeal, 102 Pa. 256.

6. If there is no positive direction of the testator to sell his real estate, but a mere power dependent for its exercise upon the volition of the executor or the consent of a third party, and before a sale in pursuance of such volition or consent, there is a devolution or transmission of one of the shares, by the death of one of the persons originally interested under the will, the share so devolved or transmitted passes to the heir of the deceased owner as real estate: Henry v. McCloskey, 9 Watts, 145.

7. It is a maxim of the law, that the heir shall not be disinherited, except by express devise or necessary implication, and all doubts are to be resolved in his favor: Curry's Estate, 19 Phila. 94.

By his original will the testator here devised to his wife premises 520 Court street for life and gave her as much of his "kitchen furniture as she shall think necessary to keep house." He then bequeathed her "the annual sum of $600, to be paid

to her in quarterly yearly payments;" and provided that "the annual amount so bequeathed, to my said wife, shall be, during said term, a lien or charge of dower upon my Penn street property, situate on the north side of Penn street, Nos. 515 and 517, between Fifth and Sixth streets." As stated above, the testator owned, at the time the will was executed, and at his decease, in addition to the said property between Fifth and Sixth streets, a valuable property on South Eleventh street, on which there was erected a hat factory. Having given his wife the house on Court street, and such kitchen furniture as she should "think necessary to keep house," and the $600 a year charged as "dower" on 515 and 517 Penn street, he proceeded as follows: " I order and direct my executor to take an inventory of all the house and kitchen furniture that my wife may want to keep house. I further direct and order my executor to sell my real and personal property what is not in the dower aforesaid." He had devised 520 Court street to his wife for life and had charged 515 and 517 Penn street with the $600 bequeathed to her annually as "a lien or charge of dower;" and it is not clear that the testator did not have in his mind, when he framed his direction to sell his "real and personal property what is not in the dower aforesaid," only the residue of his real estate, exclusive of that devised to his wife for life, and made subject to the $600 charge as "a lien or charge of dower." The positive direction to sell applies clearly to the South Eleventh street property, and any other real estate not included in or affected by the provision made for his wife; but it does not so clearly apply to the premises affected by those provisions, especially when we consider the discretion reposed in the executor by the following provision: "and in case my executor shall see proper to sell my said real estate or property" (515 and 517 Penn street) "before the decease of my wife, I order and direct that the sum of $10,000 out of the purchase money shall then remain in said property on Penn Street;" and the following provision: "Item. After all my real and personal property is disposed of as aforesaid, and thereout all my just debts and other reasonable expenses are paid and satisfied, I give and bequeath the net balance thereof unto my five children or their lawful issue, in equal proportions share and share alike." It is evident that the subject in the testator's mind, when the

last quoted provision was framed, was that part of his estate
which could be divided immediately after his death; and that
certainly embraced the personal property not taken by the widow,
and the proceeds of the real estate "not in the dower afore-
said;" and when this view is taken of the subject of the provi-
sion, and it is considered in connection with the following clause,
"but in case my executor do not sell said real estate or prop-
erty" (515 and 517 Penn street) "before the decease of my
wife, my executor shall, from time to time, collect the rents of
said real estate and property and thereout pay said quarterly
yearly payments to my wife, as aforesaid," it is quite apparent
that when the testator framed the provision, "I further direct
and order my executor to sell my real and personal property
what is not in the dower aforesaid," he may have meant, and
probably did mean, only that portion of his real estate which
was in no way connected with the widow's dower.

If this is the true construction, the result is that, while there
was conferred upon the executor power to sell the real estate
situate between Fifth and Sixth streets, and charged with the
payment of the $600 annually to the wife, there is no positive
direction in the will to sell it, and the operation of the will, as
to the property so charged, would be precisely that so explicitly
effected by the codicil; in other words, there would be a discre-
tionary power to sell, but not a peremptory direction to do so.
This intention is plainly expressed in the codicil.

In the codicil he says: "It is my will, and I do hereby di-
rect, that my real estate situate between Penn and Court and
Fifth and Sixth streets, in the city of Reading, be not sold, or
in any way disposed of, within five years after my decease, and
then only, if my executor shall deem it advisable. And I do
hereby authorize and empower my said executrix to sell at pub-
lic or private sale the said real estate, at her discretion, after
the expiration of five years from my decease. . . . I order
and direct that as soon after my decease as in the judgment of
my said executrix it shall be practicable, she shall sell at public
or private sale, all my real estate not located between Penn and
Court and Fifth and Sixth streets, in the city of Reading. . . .
I further direct that she shall sell and convert into money all
my personal property, except such household furniture as may
be retained by my wife Susanna in accordance with the terms

of my said will." He also directed, in this connection,
the conversion of all personal securities and proceeded as
follows : " After the expiration of five years from my decease,
my executrix may sell all my real estate situate between Penn
and Court and Fifth and Sixth streets . . . . as above provided,
but the said property on Court Street No. 520 shall not be
sold until after the decease of my wife Susanna."

These provisions taken from the codicil contain everything
in that instrument relating to the sale of the real estate. The
testator's objects in making the codicil were apparently three :
1. To make his daughter, Mary, executor, instead of his son
George ; 2. To place the share of George in the hands of Mary
as trustee ; and 3. To remove the obscurity pervading his orig-
inal will as to the sale of the real estate located between Penn
and Court and Fifth and Sixth streets by restraining its sale
within five years after his decease and by giving his executrix
a discretionary power to sell it at any time after that period.
As stated in the beginning of this opinion, the Penn street real
estate is located in the heart of the city, at its business center,
where real values are most affected by the growth of the city ;
and it is probable that he deferred the exercise of the power of
sale, and made the ultimate exercise of the power dependent
upon the discretion of his executrix in order that his estate
might have the benefit of any enhancement of value which
might accrue.

In speaking of the doctrine of equitable conversion, Chief
Justice THOMPSON said, in Neely v. Grantham, 58 Pa. 437 :
" It is firmly settled with us that the equitable conversion of
realty into personalty, by force of a direction in a deed or
will to sell, only takes place where the direction is positive
and absolute : Nagle's Appeal, 1 Harris, 260.    And this, as
well as other cases to which reference will be made, will con-
clusively show that if a proposed sale is contingent, or even-
tual in a deed or will, equitable conversion does not follow.
Nor will it follow even from an inevitable necessity to sell in
order to administer some provision of the will."

The codicil in this case is the last expression of the inten-
tion of the testator, and it certainly does not contain a positive
and absolute direction to sell the real estate described in the
petition, but confers only a discretionary power on the execu-

trix to sell it after the expiration of five years from his death. If, as Mr. Justice MITCHELL says, in Yerkes v. Yerkes, supra, " The presumption, therefore, no matter what the form of words used, is always against conversion, and even where it is required, it must be kept within the limits of absolute necessity ; " if, as Chief Justice THOMPSON said, in Neely v. Grantham, supra, " Nor will it follow even from an inevitable necessity to sell in order to administer some provision of the will ; " if, as stated by the Supreme Court, in Jones v. Caldwell, supra, " it must not rest in the discretion of the executor, nor depend upon contingencies ; " if, as was said by Judge PENROSE, in Curry's Estate, supra, " the heir shall not be disinherited, except by express devise or necessary implication, and all doubts are to be resolved in his favor ; " and if, as decided in Henry v. Mc-Closkey, supra, where there is no positive direction of a testator to sell his real estate, but a mere power, dependent for its exercise upon the volition of the executor, or the consent of a third party, and before a sale in pursuance of such volition or consent, there is a devolution or transmission of one of the shares, by the death of one of the persons originally interested under the will, the share so devolved or transmitted passes to the heir of the deceased owner as real estate, the premises described in the petition cannot be considered as converted by the codicil.

It is contended on behalf of the respondents that there is a blending of the real and personal estate of the testator for distribution, and that there is therefore an implied conversion. But I do not think that construction of the codicil is correct with respect to the real estate described in the petition, for it seems to me clear that the testator had in his mind a separate subject of distribution, composed of the proceeds of the personalty and of the real estate not located between Penn and Court and Fifth and Sixth streets, in the distribution referred to. The rule of law relied upon to sustain the contention that the premises in question are converted because of blending has not much vigor and is never to be applied in a doubtful case. In Perot's Appeal, supra, Mr. Justice PAXSON said: " The blending of real and personal estate by a testator, in his will, is not of much significance unless it clearly appears that he intended thereby to create a fund, raised out of both real and personal estate, and to bequeath such fund as money." There is a

total absence, in this codicil, of such specific intention to blend the real estate in question with the personal, in distribution, as to render the rule of law relied upon applicable in this case. The case of Roland v. Miller, 100 Pa. 47, has been cited as an authority for conversion in this case, but I think the case differs in material facts. In that case the testatrix directed as follows : " Item. My real estate shall not be sold until ten years after my decease. But in case my executors hereinafter named, shall lease it, or any part or parts of it, to any body, or bodies, private or corporate, for a term of fifteen years, they may do so, and shall not be compelled, by my heirs or any of them, to sell said real estate, or any part or parts thereof, so leased, until the expiration of the term of said lease." Mr. Justice TRUNKEY, at p. 59, said : " The natural and reasonable intendment of this will is that the realty shall be sold and the proceeds equally divided among the legatees. Within a limited time the executors have unlimited discretionary power to sell; after that time they are bound to sell. A provision that the executors shall not be compelled to sell by the heirs until the expiration of a stipulated term implies that they may be compelled. In this will the word heirs means legatees. The power vested in the executors, discretionary for a certain time, thereafter is unconditional, not dependent on discretion or contingencies, nor upon the consent or agreement of any person ; and if they neglect or refuse to exercise it they may be compelled to perform their duty by legal process at the instance of any legatee." The palpable difference between that case and this, where there is an absolute and indefinite discretion, is too obvious to justify comment.

Upon the decease of Elizabeth R. Maxwell, mother of the petitioner, in 1893, her one-fifth share devolved, as real estate, to the petitioner and his two sisters ; and, having vested in them in that character, it remains so. But if that were not so, the petitioner would still be entitled to partition, for the reason that the mere discretionary power of sale vested in the executrix has not been exercised.

The prayer of the petition for an inquest to make partition of the real estate described in the petition is granted.

*Error assigned* was the decree of the court.

*Isaac Hiester*, with him *Adam H. Schmehl*, for appellant.

*Benjamin F. Dettra*, for appellee.

PER CURIAM, March 24, 1902:

The correctness of this decree is demonstrated by the very able opinion of the learned judge of the orphans' court. We could add nothing to its force by further elaboration. The decree is affirmed and the appeal dismissed at costs of appellants.