# Raleigh's Estate.

| 206 | 451 |
| 209 | 221 |
| 209 | ¹231 |
| 206 | $\overline{451}$ |
| f220 | ³216 |
| c221 | ²563 |
| 206 | 451 |
| 137SC | 520 |

*Wills—Vested and contingent estates—Construction.*

Where persons who are to take under a will must be living at a certain time, the gift is contingent because until the time arrives the persons who will answer to the description cannot be ascertained.

Testator who was largely in debt directed by his will as follows : " I do hereby direct that after my business is closed up and all my debts paid, there shall be paid to my wife by my executors an annuity of $2,400, for and during all the term of her natural life ; the balance of the income of my estate, from whatever source, to be equally divided between my six children, share and share alike, until the death of my wife. In case of the death of one or more of my children, without any lawful heirs, their portion shall be equally divided among the others. If any lawful heir or heirs, they to receive said amount annually, the same as their parents would have had if living . . . . It is my will and I do hereby direct that upon the death of my wife, my executors shall divide my entire estate into as many equal portions as I shall have children living, or that should be represented by lawful heirs, and make a plain and clear statement of the division, describing the properties and numbering each lot or share, and have them of as near equal value as possible, then make the distribution as follows, viz. : Give the youngest child her choice of shares, and so on with those living according to age, and following with the lawful heirs of any deceased child or children, if any such there be, my executors to represent their interest and to choose for them." *Held,* that the children took contingent interests.

*Will—Power to sell—Conversion—Purpose.*

Where a testator authorizes his executors to sell real estate for the payment of debts, any proceeds of such sale remaining after payment of debts is to be treated as real estate, and distributed as such.

*Will—Devise—Heirs—Widow of son.*

A gift of real estate to the heirs of a son does not include the widow of the son.

Argued Jan. 29, 1903. Appeal, No. 229, Jan. T., 1903, by Mary F. Kelly Raleigh, from decree of O. C. Phila. Co., July T., 1882, No. 34, dismissing exceptions to adjudication in estate of Maurice Raleigh, deceased. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

The material portion of the will of Maurice Raleigh was as follows :

" (2) Item. I give and bequeath unto my beloved wife Bridget Raleigh during her life, the house in which we at present reside, No. 1617 N. 5th street, together with all household goods, furniture, books, wearing apparel, pictures, etc., contained therein.

" Also the house next door, No. 1619 N. 5th street, taxes, water, rents, interest on mortgage and repairs of both properties to be paid out of my estate, and at her death they revert to and become part of my estate.

" (3) Item. I do hereby order and direct my executors to pay over to my wife one hundred dollars ($100) per month, and to each of my children twenty-five dollars per month until all my debts shall be paid and business settled up.

" (4) Item. If it should seem necessary at any time to dispose of a portion of my real estate for the payment of my debts, I hereby give my executors power so to do at either public or private sale.

" (5) Item. I do hereby order and direct my executors to carry out all agreements I may have entered into, leases, etc., the same as I should have done if living, and to exercise their own judgment in reletting and making sales when it would seem wise and prudent so to do, and reinvesting in such securities as the laws of Pennsylvania would require.

" (6) Item. It is my will and I do hereby direct that the business shall be continued by my executors, for the benefit of my estate, until the expiration of the year in which my death occurs.

" (7) Item. It is my will and I do hereby direct, that after my business is closed up and all my debts paid, there shall be paid to my wife by my executors, in the place of one hundred dollars per month, an annuity of twenty-four hundred dollars ($2,400.00/100), for and during all the term of her natural life; and the balance of the income of my estate from whatever source to be equally divided between my six children, viz: James, Walter, Mary, Martha, Aggie and Kate, share and share alike—until the death of my wife. In case of the death of one or more of my children without any lawful heirs, their portion shall be equally divided among the others. If any lawful heir or heirs they to receive said amount annually the same as their parents would have had if living; I

desire these payments to my wife and children should be made monthly.

" (8) Item. It is my will, and I do hereby direct, that upon the death of my wife, my executors shall divide my entire estate into as many equal proportions as I shall have children living or that should be represented by lawful heirs and make a plain and clear statement of the division, describing the properties and numbering each lot or share and have them of as near equal value as possible, then make the distribution as follows, viz : Give the youngest child her choice of shares, and so on, with those living, according to age, and following with the lawful heirs of any deceased child or children, if any such there be, my executors to represent their interest and to choose for them.

" (12) Item. My executors shall have the power to sell my real estate from time to time as it shall seem wise and prudent so to do, and invest the net proceeds in such securities as the laws of the state of Pennsylvania require."

By a codicil testator directed as follows :

" It is my will and I hereby direct that my said executors, B. Lobenthal and Thomas W. Dell, shall continue the business of M. Raleigh & Co. under the same firm name for the benefit of my estate as long as they may think prudent and beneficial to the estate, and should they deem it prudent at any time to dispose of a portion of my real estate or to realize upon any securities they may hold in order to place themselves in funds for the successful prosecution of the business they shall have full power to do so without an order from the court."

One son, James Raleigh, died in the lifetime of the widow, leaving surviving a widow and child. The questions were whether the son took a vested interest and, if he did, whether his widow was entitled to share therein as an heir.

The auditing judge refused the claim of the widow of James Raleigh.

Exceptions to the adjudication were dismissed in an opinion by ASHMAN, J., in which HANNA, P. J., concurred and from which PENROSE and FERGUSON, JJ., dissented.

*Errors assigned* were in dismissing exceptions to adjudication.

*Henry J. Scott*, for appellant.—The intestate, James Raleigh, had a vested estate, to which his widow, as well as his child, both succeeded as his heirs upon his death: Duffield v. Duffield, 1 Dow. & Clark, 395; McClure's App., 72 Pa. 414; Richardson's App., 19 W. N. C. 175; Womrath v. McCormick, 51 Pa. 504; Little's App., 117 Pa. 14; Patterson v. Hawthorn, 12 S. & R. 112; Laguerenne's Est., 12 W. N. C. 110; Bloodgood's Est., 8 Pa. C. C. Rep. 546; Crawford v. Ford, 7 W. N. C. 532; Thomman's Est., 161 Pa. 444.

There has been a conversion of the realty into personalty: Thomas's App., 167 Pa. 536; Lackey's Est., 149 Pa. 7; Page's Est., 75 Pa. 87; Bender v. Luckenbach, 162 Pa. 18; Longwell v. Bentley, 23 Pa. 99; Darlington v. Darlington, 160 Pa. 65; Marshall's Est., 147 Pa. 77.

The exceptant, widow of James Raleigh, intestate, is his heir, together with his child, both as to his realty as well as his personalty: Potter's Est., 13 Phila. 318; Bloodgood's Est., 8 Pa. C. C. Rep. 546; Cote's App., 79 Pa. 235; Clark v. Scott, 67 Pa. 446.

*Samuel Wakeling*, for appellees.—The estates were contingent in the children: Lumberman's Nat. Bank's App., 13 W. N. C. 191; Barger's App., 100 Pa. 239; Weilly's Est., 200 Pa. 288.

There was no conversion: Chew v. Nicklin, 45 Pa. 87; Edwards's App., 47 Pa. 153; Hunt's App., 105 Pa. 128; Yerkes v. Yerkes, 200 Pa. 419.

OPINION BY MR. JUSTICE POTTER, July 9, 1903:

Maurice Raleigh died at Philadelphia, January 10, 1882, testate, and leaving to survive him a widow, Bridget Raleigh, and six children. He was indebted to various creditors to an amount exceeding $360,000.

James Raleigh, a son of the testator, died intestate September 26, 1896, leaving a widow, Mary F. Kelly Raleigh (the appellant) and one child, Martha Raleigh, of whose estate the Commonwealth Title, Insurance & Trust Company was appointed, guardian. The debts of the decedent were fully paid at the date of October 1, 1900. Bridget Raleigh, the widow of the testator, died July 6, 1901.

By his will dated March 30, 1879, and duly probated at
Philadelphia on January 17, 1882, Maurice Raleigh devised
and bequeathed unto his wife, Bridget, the premises at 1617
and 1619 North Fifth street, Philadelphia, with his house-
hold goods for life, and directed his executors to pay her the
sum of $100 per month until such time as his indebtedness
should be discharged and his business settled; and to each of
his children $25.00 per month during such period, and after
the payment of his debts and the closing of his business he di-
rected that his widow should have an annuity of $2,400 during
her life, and that the balance of the income, during her life,
should be equally divided between his children. In case any
of them died without heirs, then to the survivors, thus indi-
cating the exclusion of collaterals. If any lawful heirs, they
were to receive the share that their parents would have taken
if living.

He further directed that upon the death of his wife, his
executors should divide his entire estate into as many equal
proportions as he should have children living, or that should
be represented by lawful heirs, and that his executors should
make a plain and clear statement of the division, describing
the properties and numbering each lot, or share, which should
be made as nearly equal in value as possible. The executors
were then to make distribution by giving the youngest child
her choice of shares, and so on with those living, according to
age; following with the lawful heirs of any deceased child or
children, if any such, the executors of the testator to represent
their interest and choose for them.

He appointed Bernard Loebenthal and Thomas W. Dell as
executors and trustees, to whom letters testamentary were
granted, and who acted as trustees under the will. Prior to
the death of the widow, the executors filed ten accounts, but
no distribution of the principal was made. The eleventh ac-
count was filed September 30, 1901, and showed balances both
of principal and income in the hands of accountants.

Upon the audit, the appellant, as widow of James Raleigh,
claimed that her husband, at the date of his death in 1896, was
entitled to a vested interest in his father's estate, which should
be awarded to his administrator when appointed; and also
that she was entitled to share in the income of the estate, since

her husband's death. The auditing judge disallowed both of these claims, holding that the estate given to James Raleigh was not vested, but was contingent on his surviving his mother, and that the income was to be distributed as real estate (having accrued from the proceeds of sales of real estate made under the powers in the will); that there had been no conversion and therefore the widow, not being an heir of her husband, could not share in the distribution.

The appellant excepted to the adjudication and upon argument before the court in banc, the judges were equally divided in opinion. The exceptions were accordingly dismissed and the adjudication confirmed. The questions involved are:

1. Whether James Raleigh took a vested estate under the will of his father?

2. Whether under the will of Maurice Raleigh, the widow of James Raleigh was entitled after her husband's death, to share in the distribution of income as one of his lawful heirs?

The testator evidently appreciated the fact that a large indebtedness existed, which would require careful management, and some time to discharge without detriment to his estate. He, therefore, made specific pecuniary provision to a limited amount for the maintenance of his wife and children during that period. After it had elapsed, and the debts were paid, the amounts to be paid the wife and children were increased, but they still bore the impress of distinct specific gifts. In so far as the son James is concerned, the gift of income to him was for the life of the widow, if he outlived her; if he did not, his lawful heir was to receive the same amount annually which he would have received if living.

The intention of the testator in this respect is clear. In like manner, upon the death of his wife, the testator provided that in the distribution of the corpus of his estate, the heir should be substituted for the parent, in case any of the testator's children were not then living, and the right of choice in the division of the properties was expressly bestowed upon the heir. How can the right of the heir to succeed to the share of the parent in the income during the life of the testator's wife, and the equally clear right of the heir to a choice of the real estate, at the period of its distribution, be reconciled with the theory that the interest of the son was a vested one? His interest

was not one for his life, but its character depended upon his outliving the widow. His share both in income and in principal, was contingent upon that event.

We regard the provision that in case of the death of a child, his heir should be substituted to the parent's share of the income during the life of the widow, and should also exercise the right of choice, in the after distribution of the principal of the estate, as annexing the condition of time to the substance as well as to the payment of the gift. It could only go to the beneficiary living at the time of distribution.

In Rudy's Estate, 185 Pa. 359, a remainder, after the death of the testator's widow, to children, naming them, " if they be living or the issue of such of them as may then be deceased," was held to be contingent. In the opinion of Judge ASHMAN, approved by this court, it is said, on page 360 : " In Pennsylvania the rule is well established that where persons who are to take must be living at a certain time, the gift is contingent, because until the time arrives, the persons who will answer to that description cannot be ascertained. Hence a gift ' to such of his children as might then be living ' (McBride v. Smyth, 54 Pa. 245), or to a child for life and after her death ' to all her children then living ' (Buzby's Appeal, 61 Pa. 111 ; Delbert's Appeal, 83 Pa. 462), has been esteemed contingent. It is difficult—perhaps it is better to say impossible—to harmonize the latter cases with Crawford v. Ford, 7 W. N. C. 532, and Laguerenne's Estate, 12 W. N. C. 110, where the gift at the end of the life estate was to ' all my children who shall be then living and the lawful issue of such as shall be dead ; ' or Manderson v. Lukens, 23 Pa. 31, to ' be equally divided among his children which should be then alive ; ' and Womrath v. McCormick, 51 Pa. 504, where the estate was to ' be divided into as many parts as testator should then have children living and be given to his living children and the issue of those dead,' in all of which cases the estates were held to be vested." See also Martin's Estate, 185 Pa. 51.

Mr. Justice SHARSWOOD says in Provenchere's Appeal, 67 Pa. 463 : " There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. Where indeed the same precise form of expression occurs as may have been the subject of some former adjudica-

tion, unaffected by any indication of a different intention in other parts of the instrument, the courts, with a view to certainty and stability of titles, will follow the precedent. Counsel can thus be enabled to advise with confidence. Nevertheless the cardinal canon still holds good, that the intention of the testator of each will separately is to be gathered from its four corners. Hence almost every general rule has its recognized special exceptions, with exceptions to such exceptions which bring us back to the general rule again, and this may be and sometimes has been carried further in the vain attempt to generalize and classify all the decisions upon this most difficult and doubtful subject—the ascertainment of the intention from the words of a man, who in many cases had no intention at all, the question not being present in his mind at the time the words were used. These remarks are particularly applicable to the controversies which have arisen as to whether the future legacies give present vested or contingent interests. The determinations are very numerous—not always reconcilable—and in the nature of the subject this was inevitable. Vice Chancellor Sir Launcelot Shadwell has remarked very justly: 'The question is one of substance and not of form. The question in all cases has been whether the testator intended it as a condition precedent that the legatee should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will and not in particular expressions:' Leeming v. Sherratt, 2 Hare, 14."

In the present case there was no gift of any part of the testator's estate (except legacies of $100 a month to his widow and $25 a month to each of his children) "until all my debts shall be paid and business settled up," or as he puts it again, "after my business is closed up and all my debts paid." The earliest point of time, therefore, at which it could possibly be held that the legacy to James Raleigh of a distributive share in the estate, could take effect would be the date of the final closing up of the business and payment of testator's debts. This date was October 1, 1900. But James Raleigh died September 26, 1896, long before that date. Therefore no interest in the share of the estate bequeathed to him ever became vested in him.

He was not even a life tenant; his interest was only that of a monthly legatee until the debts were paid. As he died before that was done, the share of income which had gone to him, passed to his child as a new object of bounty, until the death of testator's widow, after which the child took one sixth of the corpus. This was the manifest intent as shown in the will. We do not regard this case as one of a clear life estate to the widow, with remainder to the children, free from conditions as to the period of vesting and time of enjoyment. The will created an active trust to operate through two specific periods of time, before there could be any vesting, or any ascertainment of the parties who would take the corpus of the estate.

The remaining question, as to the right of appellant to share in the income, depends upon whether there was a conversion of the real estate under the will.

That there was no conversion effected by the will, is clear, from the doctrine of Oliver's Estate, 199 Pa. 509, and Yerkes v. Yerkes, 200 Pa. 419, and the later case of Sauerbier's Estate, 202 Pa. 187, where the authorities are considered at length in a learned opinion by Judge Bland, affirmed by this court.

There being no conversion, the income was the proceeds of real estate and distributable as such. The gifts to the "heirs" of James Raleigh did not include his widow: Dodge's Appeal, 106 Pa. 216; Lesieur's Estate, 205 Pa. 119.

The assignments of error are overruled and the decree of the court below is affirmed.