J. O. CARTER, Trustee, *v.* SYBIL A. CARTER, GEORGE
R. CARTER, FRANCES I. CREHORE, AGNES C.
GALT, CORDELIA J. CARTER, MARY H. S. DAVIS,
and HENRY A. P. CARTER and GRACE S. CARTER,
minors, represented by their Guardian *ad litem*, THOMAS
FITCH.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED NOVEMBER 19, 1902.   DECIDED DECEMBER 10, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Under a provision in a trust deed for a change of trustees when in
the opinion of one of the *cestuis que trust* and the guardian of
others the trustee becomes incapable or unfit to act in the trust,
the trustee need not resign upon the mere request of such *cestui
que trust* and several other *cestuis que trust*.

Under a requirement for the trustee to convey upon the written
request of one of the *cestuis que trust* and the guardian of others,
a conveyance need not be made upon the written request of that
*cestui que trust* alone even after a request by the guardian becomes
impossible by reason of the arrival of all the *cestuis que trust* at
the age of majority.

Property was conveyed in trust, "during the life" of A to allow her
to occupy the property, she paying the expenses, or to pay her the
net income or the net income of the proceeds, in case of sale, "and
at her death in further trust" to allow her children to occupy until
of certain age, their guardian paying expenses, or to pay them
and their heirs, *per stirpes*, the net income, "and when all" arrive
at the age, &c., to convey the property or pay the proceeds and
unapplied income thereof, in case of sale, to those then living and
the heirs of those deceased, *per stirpes*, &c. Held, the trust was to
continue through the life of the life tenant, notwithstanding the
arrival of all the children at the prescribed age meanwhile.

OPINION OF THE COURT BY FREAR, C. J.

This is a bill in equity brought by the plaintiff trustee for in-

structions as to his duty in several respects under a deed of trust made to him by Helen S. Judd and others, dated March 8, 1879, of the premises known as "Sweet Home," situated on the Northeasterly corner of Judd and Nuuanu streets in Honolulu.

The trusts were in favor of the defendant, Sybil A. Carter, then wife of Henry A. P. Carter, since deceased, and their children Charles L. Carter (since deceased, leaving as his sole devisee and legatee his widow, now the defendant Mrs. Mary H. S. Davis, and as his sole heirs his minor children, the defendants Henry A. P. Carter and Grace S. Carter), Frances I. Crehore (formerly Carter), Agnes C. Galt (formerly Carter), and, the youngest, Cordelia J. Carter, who became twenty years of age on May 17, 1896.

The trusts are set forth in the *habendum* of the deed, which declares that the premises shall be held by the plaintiff, "his heirs and assigns forever but in trust nevertheless as follows: during the life of Sybil Augusta Carter wife of the said Henry A. P. Carter to allow her to occupy and enjoy the said estate she paying the taxes and all necessary charges and expenses or at her election to pay over to her the net rents and profits thereof or of the proceeds thereof if sold as hereinafter provided but in no event shall the said estate or any interest therein or the rents or profits thereof or the income of the proceeds thereof be subject or liable to any marital control obligations or direction and at her death in further trust to allow the children of the said Sybil Augusta Carter by the said Henry A. P. Carter and such person or persons as their guardian appointed by authority of a Court of competent jurisdiction in the said Hawaiian Islands or under the will of the said Henry A. P. Carter shall in writing nominate and appoint to occupy and enjoy the said estate until all of said children if they so long live shall have arrived each to the age of twenty years said guardian paying the taxes and all necessary charges and expenses or at the written request of such guardian for the time being to pay over to the said children and to the heirs and legal representatives of any of the said children who may hereafter decease the net rents and profits thereof in equal

shares according to the number of said children now living or hereafter born (such heirs and legal representatives taking by way of representation and not according to number) and when all of the said children shall if they so long live have come to the age of twenty years or if no one of them shall so long live at the death of the last surviving one of them to convey and transfer the said estate or to pay and deliver over the proceeds and all unapplied income thereof (in case of sale) in equal shares to such of the said children as shall then be living and to the heirs and legal representatives of any who shall have hereafter deceased (such heirs and legal representatives taking by way of representation and not according to number) or if no one of said children reach said age in like manner to the heirs and legal representatives of all of the said children by way of representation *But Provided* always and it is hereby declared and agreed that the said trustee and any successor in said trust upon the request in writing of the said Sybil Augusta Carter and of the guardian for the time being (appointed as aforesaid) of the said children or of any of them shall sell and convey or lease or mortgage the said estate or any part thereof or interest therein according as he may be so requested holding the proceeds thereof upon the same trusts as are herein expressed regarding the estate hereby conveyed and no purchaser at any such sale shall be answerable for the application of the purchase money or the said trustee or any successor in such trust may in his discretion at any time upon the written request of the said Sybil Augusta and of the guardian for the time being of any of the said children (being appointed as aforesaid) convey and transfer the estate hereby conveyed or pay over the proceeds thereof if sold to the said Henry A. P. Carter and the trust hereby created shall thereby be wholly discharged and released therefrom and it is further hereby provided declared and agreed that at any time after the death of the said Sybil Augusta Carter and while said trusts or any of them shall be undetermined the said trustee and any successor in said trust upon the written request of the Guardian as aforesaid will sell and convey or mortgage or lease said estate or any part thereof or interest therein

according as so requested holding the proceeds thereof upon the trusts aforesaid And it is further declared that for any sums of money which may be paid to the said Sybil Augusta Carter by the authority of these presents her sole receipts shall notwithstanding coverture suffice and *Provided always* and it is hereby further declared that if the said or any future trustee hereof shall die or in writing renounce the said trusts or go to reside abroad or decline to accept or (in the opinion of said Sybil Augusta Carter and of said guardian) become incapable or unfit to act in the trusts of these presents while any of them shall be subsisting then and in every or any such cases and as often as the same shall happen it shall be lawful for the said Sybil Augusta Carter and the said guardian or after her death for the said guardian by any writing or writings under their hands and seals attested by two or more witnesses to nominate and substitute any person or persons to be trustee or trustees hereof in place of the trustee or trustees so dying renouncing going to reside abroad declining or becoming incapable or unfit to act as aforesaid," &c.

1. The first question upon which instructions are asked is whether the trustee should resign the trust in consequence of a request to do so, in favor of J. R. Galt, made in 1899 by the defendants Sybil A. Carter, George R. Carter, Frances I. Crehore, Agnes C. Galt and Cordelia J. Carter.

It is clear from the language of the deed and seems to be conceded by all the defendants that, although the deed provides, in the second proviso of the portion above quoted, for a change of trustees upon the happening of certain events, the mere request of the *cestuis que trust* or some of them is not one of such events. Accordingly, so far as is shown in this case, the trustee need not resign. He may do so or not, as he pleases.

2. The second question is whether the trustee should comply with a request in writing made by Sybil A. Carter in 1899, with the consent of her surviving children, to convey the premises to one of them, George R. Carter, for $18,000. The deed provides, in the first proviso above quoted, that the trustee may convey the premises "upon the request in writing of the said Sybil Augusta

Carter and of the guardian for the time being (appointed as aforesaid) of the said children or of any of them," &c. The method of appointment "aforesaid" is "by authority of a court of competent jurisdiction in the said Hawaiian Islands, or under the will of the said Henry A. P. Carter."

It seems not to be disputed and in our opinion it is the correct view that the written request of Sybil A. Carter and such guardian is a condition precedent to the execution of the power of sale, and that, since there is and can be no such guardian, all the children having become of age, that condition has not been and can not be fulfilled. See *Barber v. Cary*, 11 N. Y. 397; *Gulick v. Griswold*, 160 N. Y. 399; *Goebel v. Thieme*, 85 Wis. 286; *Crane v. Bolles*, 49 N. J. Eq. 373; *Sykes v. Sheard*, 2 De G., J. & S. 6. And yet, considering the particular language of this deed, much might be said in support of the view that the written request of Sybil A. Carter alone would under the circumstances be a sufficient compliance with the condition. See also *Leeds v. Wakefield*, 10 Gray 514; *Sohier v. Williams*, 1 Curtis 479; *Hackett v. Milnor*, 156 Pa. St. 1.

3. The third question is whether the trust terminated upon the arrival of the youngest daughter at the age of twenty years, though the life *cestui que trust*, Sybil A. Carter, was and is still living, and whether therefore the trustee should upon the happening of that event have conveyed the premises to the persons designated, subject to the life interest in the said Sybil A. Carter, or should do so now. This is the main question in the case. Its solution depends chiefly upon the construction of the first sentence, that is, the portion preceding the first proviso, above quoted from the deed.

This portion of the deed may be divided in substance as follows, though the divisions are not separated by punctuation marks or in any other manner in point of form. The property is to be held in trust: (1) "during the life" of Sybil A. Carter to allow her (a) to occupy and enjoy the estate, she paying the expenses, or (b) to pay her the net income thereof or (c) the net income of the proceeds thereof in case of sale, (2) "and at her death in fur-

ther trust" (a) to allow the children, &c., to occupy and enjoy the estate until all arrive, if they live so long, at the age of twenty years, their guardian paying the expenses or (b) to pay them and their heirs, *per stirpes*, the net profits thereof, (3) "and when all of the said children" shall come to the age of twenty years or, if none of them live so long, at the death of the last survivor, to convey the estate or pay the proceeds and un-applied income thereof, in case of sale, in equal shares to the children then living and the heirs and legal representatives of those then deceased, *per stirpes*, or, if none reach such age, to the heirs, &c., of all.

It is contended on the one hand that these are three co-ordinate provisions, the first intended to cover the period during the life of Sybil A. Carter, the second, the period after the death in certain contingencies, and the third, to be independent and take effect during either period, that is, even during the life of Sybil A. Carter, if all the children attain the prescribed age during that period, or, to put it another way, that the words "at her death" do not apply to part 3 as well as to part 2. On the other hand it is contended that parts 2 and 3 are alternate or sequential subdivisions, that is, that part 1 covers the period of the life of the life-tenant, and that parts 2 and 3 both refer to the period thereafter, or, to put it differently, that the words "at her death" introduces part 3 as well as part 2.

This latter contention, it seems to us, is the more reasonable. Those who support the former contention, that is, that the trust has terminated and that the property or its proceeds should have been transferred to the children when they all attained the prescribed age, even though the life tenant still lived, concede that the latter's life estate would not thereby be defeated. They concede that she would keep an equitable life estate and that upon the transfer the children would have merely the legal estate until death of the life-tenant. The grantor obviously had no such idea. She expressly provided in part 1 that the trust, not merely the equitable estate, should continue "during the life" of the life-tenant, and during all that time the trustee might have active

duties to perform under subdivisions b and c of part 1, and under part 3 the intention was that the conveyance and transfer, when made at all, should be plenary and carry the beneficial use as well as the mere legal title. The transfer was to be, not merely of the premises, but, in case it were sold, of the proceeds thereof, and not merely that, but also of the *unapplied income,* and to the children and their heirs, &c., and was not in terms required to be subject to the equitable life estate.

The argument was made in support of this view that the grantor could hardly have intended that in case of a sale the proceeds should be distributed among no telling how many heirs and its scattered fragments in the form of money held by them severally, subject to an equitable estate therein and with no security for the protection of the equitable life tenant. That argument is sound as far as it goes as tending to show the probable intention, on the theory that a reasonable construction should be adopted if possible, and although its force, as argued contra, may be lessened to some extent by the fact that it is a mere argument of expediency and not based on the language of the deed, yet the reasons that we have given above are not mere arguments of expediency. They rest upon the language of the deed. Part 1 expressly requires the trust to continue for life and part 3, if it means anything, means that the persons described are to have the equitable as well as the legal title. Consequently if part 3 should take effect during the life of the life tenant, the equitable estate of the latter would be defeated. In other words, the view that the trust terminated on the youngest child's attaining the prescribed age even though during the life of the life tenant, would require part 3 to be construed inconsistently with part 1 and would defeat one of the primary objects of the trust.

Moreover, it seems to us as natural, perhaps more so, to read parts 2 and 3 as both introduced by the words "at her death" and being alternate or sequential subdivisions, as to read part 3 independently and as having no relation to the words "at her death." It is at least doubtful which is the more natural. On either theory

the phraseology could be greatly improved. But the substance is more than the mere form and must prevail.

Another reason given in favor of the "termination" view is that part 2 is stated to be "in further trust," while part 3 is not introduced by any such words. This is at most a small matter of form and, especially considering that there are other inaccuracies of form in this deed, should be given little weight·one way or the other. And yet we are not sure but that that little weight is on the side we have taken rather than on that on which it is urged. For, the word "trust" as here used is not the estate but the power or duty of the trustee. The property is given in fee but nevertheless in trust to˙do certain things, that is, to allow the life tenant to occupy, &c., and in further trust to allow the children, &c., and to convey to them, &c. Looking at the word "trust" in this sense, the use of the phrase "in further trust" rather supports the view that parts 2 and 3 go together and are "in further trust" with relation to part 1. Otherwise we should expect "in further trust" to be repeated in part 3.

It is further contended that the subsequent provisions of the deed bear out the "termination" theory. For·instance, it is provided that the property may be sold, &c., on the request of Sybil A. Carter and the guardian, and, after the former's death, on the request of the latter alone; also that the trustee, if he should become incapable, may be removed and a new one appointed by Sybil A. Carter and the guardian or, after her death, by the latter alone. Hence, it is argued, the grantor intended that the estate should be easily handled, that future contingencies should be provided for, and that if the trust did not terminate on the youngest child's attaining the age of twenty years, during the life of Sybil A. Carter, there could be no sale, &c., and no change of trustee during the period from the time when the youngest·child attained that age, to the death of Sybil A. Carter, because there could be no guardian to act as required by the deed. This last argument is perhaps the strongest on that side, for it points out a contingency unprovided for unless the "termination" theory is adopted, and the presumption is that all contingencies were in-

tended to be provided for. But the argument is one of mere expediency, to use the language of counsel above set forth in regard to a different argument in support of the opposite view. Further, the contingencies are not such as necessarily need have been provided for, and they could be met in part at least by a court of equity in the exercise of its well established jurisdiction over trusts. Again, when we consider that other contingencies were overlooked in this deed, the argument that the court should strain the language to meet the contingency in question is greatly weakened. Lastly, while the court should construe the deed, if possible, so as to avoid leaving contingencies unprovided for, it cannot supply deficiencies which actually exist. In a case of doubt the argument in question might control, but it cannot control when, as here, to allow it to control would be to override the manifest intention of the grantor in other respects and perhaps leave unprovided for more serious contingencies.

It is contended further that if the trust did not terminate upon the arrival of the youngest child at the prescribed age, there is technically no time at which it can terminate, since such child cannot at any time arrive at such age after the life of the life tenant, she having already arrived at that age during the life of the life tenant, and that therefore a perpetuity would be created. The trust will terminate when its purposes are fulfilled. Moreover, the words "and when all of said children shall" attain such age need not, even on the view that we take, be construed as necessarily having reference to the time after the death of the life tenant. The language is not very apt or definite, looked at from either standpoint. The words introducing part 2 are not "after her death" but "at her death." The intention was that at that time the trust should be to allow the children to occupy, &c., so long as any were under the prescribed age and, when, that is, then or thereafter, the children should be of that age, to convey, &c. Part 3 was to be alternative or sequential to part 2 as the case might require, though it must be admitted that the language is not felicitous. It is not felicitous on any theory.

33—D

But, as remarked above, the clearly expressed intentions on substantial points must prevail over mere verbal forms.

The case of *Schaffer v. Wadsworth*, 106 Mass. 19, supports our view in a general way, in both its reasoning and conclusion, although it is not in all respects parallel with this.

The fourth question is whether, if the trust terminated and a conveyance should be made by the trustee, the deceased son Charles L. Carter's portion should be conveyed to his widow, now Mrs. Mary H. S. Davis, defendant, or to his minor children, also defendants. The plaintiff in his bill does not request an answer to this question unless the court holds that the trust terminated, and none of the defendants seem to desire an answer to it except in the same event. Since, therefore, we hold that the trust did not terminate, we need not express an opinion on this fourth question.

The decree of the Circuit Judge is in accordance with the foregoing views on the first three questions but it goes further and sets forth instructions on other questions. As to such further instructions, upon which we express no opinion, the decree is reversed.

A decree will be signed in conformity with this opinion, on presentation in this Court.

*Robertson & Wilder* for plaintiff.

*Kinney, Ballou & McClanahan* for defendants other than Mrs. Davis and her minor children.

*Holmes & Stanley* for Mrs. Davis.

*Fitch & Highton* for the guardian *ad litem* of the minor children.