*W. W. Thayer* for defendant.

---

# J. O. CARTER, TRUSTEE, *v.* MARY H. S. DAVIS AND HENRY A. P. CARTER, A MINOR, AND GRACE S. CARTER, A MINOR.

ORIGINAL.

ARGUED AUGUST 27, 1907.       DECIDED OCTOBER 25, 1907.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

DEEDS—*construction—vested and contingent remainders.*

> A direction to a trustee to convey the estate upon the happening of a certain future event "to such of the said children as shall then be living and to the heirs and legal representatives of any who shall have hereafter deceased" creates a contingent remainder, and the heirs of a deceased child take to the exclusion of the sole devisee under his will.

OPINION OF THE COURT BY BALLOU, J.

This is a submission upon an agreed statement of facts wherein the plaintiff trustee seeks the instruction of the court as to the person to whom he shall convey certain real estate remaining in his possession at the termination of his trust. The controversy is substantially between Mary H. S. Davis, on the one hand, and her minor children, Henry A. P. Carter and Grace S. Carter, represented by their guardian, on the other, both parties claiming to be entitled to a conveyance of the property in question.

The real estate is a portion of the premises known as Sweet Home conveyed to the trustee by trust deed dated March 8, 1879. The grantors were Helen Seymour Judd and others, but the consideration was paid by Henry A. P. Carter and it appears from the face of the instrument that the deed was in the nature of a settlement by H. A. P. Carter for the benefit of his wife and children. The portion of the trust deed material to the present issue is the declaration of the trust in the habendum, reading as follows:

"In trust nevertheless as follows: During the life of Sybil Augusta Carter wife of the said Henry A. P. Carter to allow her to occupy and enjoy the said estate she paying the taxes and all necessary charges and expenses or at her election to pay over to her the net rents and profits thereof or of the proceeds thereof if sold as hereinafter provided but in no event shall the said estate or any interest therein or the rents or profits thereof or the income of the proceeds thereof be subject or liable to any marital control obligations or direction and at her death in further trust to allow the children of the said Sybil Augusta Carter by the said Henry A. P. Carter and such person or persons as their guardian appointed by authority of a Court of competent jurisdiction in the said Hawaiian Islands or under the will of the said Henry A. P. Carter shall in writing nominate and appoint to occupy and enjoy the said estate until all of said children if they so long live shall have arrived each to the age of twenty years said guardian paying the taxes and all necessary charges and expenses or at the written request of such guardian for the time being to pay over to the said children and to the heirs and legal representatives of any of the said children who may hereafter decease the net rents and profits thereof in equal shares according to the number of said children now living or hereafter born (such heirs and legal representatives taking by way of representation and not according to number) and when all of the said children shall if they so long live have come to the age of twenty years or if no one of them shall so long live at the death of the last surviving one of them to convey and transfer the said estate or to pay and deliver over the proceeds and all unapplied income thereof (in case of sale) in equal shares to such of the said children as shall then be living and to the heirs and legal

representatives of any who shall have hereafter deceased (such heirs and legal representatives taking by way of representation and not according to number) or if no one of said children reach said age in like manner to the heirs and legal representatives of all of the said children by way of representation *But Provided* always and it is hereby declared and agreed that the said trustee and any successor in said trust upon the request in writing of the said Sybil Augusta Carter and of the guardian for the time being (appointed as aforesaid) of the said children or of any of them shall sell and convey or lease or mortgage the said estate or any part thereof or interest therein according as he may be so requested holding the proceeds thereof upon the same trusts as are herein expressed regarding the estate hereby conveyed and no purchaser at any such sale shall be answerable for the application of the purchase money or the said trustee or any successor in such trust may in his discretion at any time upon the written request of the said Sybil Augusta and of the guardian for the time being of any of the said children (being appointed as aforesaid) convey and transfer the estate hereby conveyed or pay over the proceeds thereof if sold to the said Henry A. P. Carter and the trust hereby created shall thereby be wholly discharged and released therefrom and it is further hereby provided declared and agreed that at any time after the death of the said Sybil Augusta Carter and while said trusts or any of them shall be undetermined the said trustee and any successor in said trust upon the written request of the Guardian as aforesaid will sell and convey or mortgage or lease said estate or any part thereof or interest therein according as so requested holding the proceeds thereof upon the trusts aforesaid."

At the time of the execution of the deed Henry A. P. Carter and Sybil Augusta Carter, his wife, had five living children, and afterwards had a son who died in infancy.

Henry A. P. Carter died November 1, 1891.. Charles L. Carter, the eldest child, died January 7, 1895, leaving as the sole devisee under his will his widow, now Mary H. S. Davis, and as his sole heirs at law his two minor children, who are defendants in this case. Cordelia J. Carter, the youngest surviving child, reached the age of twenty years on May 17, 1896, Sybil Augusta Carter, being still alive. This court held in

*Carter v. Carter,* 14 Haw. 505, that the trust did not terminate at that time but would continue until the death of Sybil Augusta Carter. Since that decision Sybil Augusta Carter has died and the land has been partitioned amongst the surviving children with the exception of the portion now in dispute, which is the share to which Charles L. Carter would have been entitled if he had survived his mother. As he did not do so, the issue is now presented as to whether his share in the estate was so vested as to pass to his widow by the terms of his will, or whether it should be conveyed to his minor children as his heirs at law by virtue of the terms of the trust deed.

As a matter of grammatical construction we think the duty of the trustee, upon the termination of the trust, to be sufficiently clear. He is to convey and transfer the estate in equal shares (1) "to such of the said children as shall then be living" and (2) "to the heirs and legal representatives of any who shall have hereafter deceased (such heirs and legal representatives taking by way of representation and not according to number.)" There is no difficulty in determining which of the children referred to were living at the specified time, and they have already received their shares. There is scarcely any greater difficulty in determining the heirs of the deceased child, Charles L. Carter; this court having already held, in construing the will of his father, that a devise to his "heirs" was a devise to those who would take under the statute of descent, which excluded his widow. *Carter v. Carter,* 10 Haw. 687.

It is argued, however, that under the terms of the trust deed Charles L. Carter had during his lifetime a "vested interest" in this real estate, by which counsel for Mrs. Davis mean an interest transmissible by devise under his will. The interest in question is undoubtedly in the nature of an equitable remainder, limited after the termination of the equitable estate for the life of Sybil Augusta Carter, and until the attainment of twenty years by the youngest child, but we are of the

opinion that, by the great weight of authority, it is a contingent, and not a vested, remainder.

We may distinguish three classes of cases. First, a devise or gift to a designated person who shall fulfil a certain condition, as a gift "to A when he shall arrive at the age of twenty years" or a gift "to A if he shall survive B." Second, a devise or gift to the whole of a designated class who shall fulfil a certain condition, as a gift "to the children of A when they shall reach the age of majority." Third, a devise or gift to such members of a designated class as shall fulfil a certain condition, as a gift "to such children of A as shall attain majority."

In the first two classes the question as to whether the devise or bequest is vested or contingent is often made to depend upon nice distinctions of language, the courts leaning strongly to such construction as will make the remainder vested. The reason for this is often frankly stated by the courts to be found not in the construction of the will itself but in an endeavor to supply the presumably inadvertent omission of the testator. As was said in a leading case in the House of Lords, in which, however, the estate was held contingent:

"Testators who create contingent estates, often forget to make any provision for the preservation of their estates, and for the disposition of the rents and profits in the intermediate period, between their deaths and the vesting of their estates. In such cases, the estates descend to the heirs, who, knowing that they are to enjoy them only for a short period, and that they have obtained the possession of them from the inattention of, and not from the bounty of the testator, or from the mistake of the professional man who drew the will, will make the most that they can of them during the time that they remain theirs, regardless of any injury that the estates may suffer from their conduct. The rights of the different members of families not being ascertained whilst estates remain contingent, such families continue in an unsettled state, which is often productive of inconvenience, and sometimes of injury to them. If the parents attaining a certain age, be a condition precedent to the vesting estates by the death of their parents,

before they are of that age, children lose estates which were intended for them, and which their relation to the testators may give them the strongest claim to.

"In consideration of these circumstances, the judges from the earliest times were always inclined to decide, that estates devised were vested; and it has long been an established rule for the guidance of the Courts of Westminster in construing devises, that all estates are to be holden to be vested, except estates, in the devise of which a condition precedent to the vesting is so clearly expressed that the Courts cannot treat them as vested, without deciding in direct opposition to the terms of the will. If there be the least doubt, advantage is to be taken of the circumstance occasioning that doubt; and what seems to make a condition, is holden to have only the effect of postponing the right of possession. To accomplish this purpose, a distinction had been made between the adverbs *if* and *when,* to which the learned in our language, not of the profession of the law, would perhaps not agree: upon this distinction, however, many equitable arrangements of property have been made; upon this distinction the titles of many estates depend, and it will therefore be the duty of the judges to observe it." *Duffield v. Duffield,* 3 Bligh N. S. 260, 330; 1 Dow & Cl. 268, 311.

The distinction between the third class and first two, though not alluded to in argument, is, however, fundamental. Where gifts are made to such beneficiaries as shall be living at a particular time (without any direct gift to the whole class immediately preceding such restrictive description) the interest so given is necessarily contingent because the persons who fit the description cannot be ascertained until the happening of the event. Jarman refers to this "very material distinction between a devise to an individual or to a class if or when he or they attain twenty-one, with a gift over on death under that age, and a devise to 'such of a class as shall attain twenty-one' with a corresponding gift over." 1 Jarman on Wills, 817. In the latter case, as in all cases where the devise or gift is to such members of a class as shall fulfil a certain condition at a future time with reference to the creation of the estate, the remainder is contingent.

"The vesting is obviously postponed where the attainment to a particular age is introduced into and made a constituent part of the description or character of the objects of the gift, as where the bequest is to the children who shall attain, or to such children as shall attain the age of twenty-one years; there being in such case no gift except to the persons who answer the qualification which the testator has annexed to the enjoyment of his bounty." 1 Jarman on Wills, 854.

"The rule of construction just stated in application to remainders to classes may yield before a clear indication of a contrary intention in the will, from which it is manifest that the testator intends to postpone the vesting of the class gift until the death of the life tenant. If from the language of the will it is clear that the testator meant that only those persons who *may compose the class at the death of the tenant for life* shall take anything in possession or enjoyment, the remainder to the class is contingent. All members of the class who are alive at the death of the testator, and all who are born during the life estate, take contingent remainders; and when the contingency is that only those members of the class shall enjoy the remainder in possession who are alive at the death of the life tenant, the remainder, not being descendible, is neither assignable nor devisable during the existence of the particular estate.

"Words of survivorship are not, as is elsewhere explained, always conclusive upon the point whether a remainder is vested or contingent. Though the courts, as a general rule, will in most cases refer the language of survivorship to as early a date as possible consistent with the expressed intention in the will, such terms as 'to the children *then surviving,*' to children *'then living.'* or to A., B. and C. and the 'survivor of them,' may prevent the vesting of a remainder or other future devise at the testator's death, and show that it is meant to be contingent until the death of the life tenant. Accordingly where the testator, after he has devised a life estate to A., upon A.'s death devises the remainder in fee to A.'s children *'then living or then surviving,'* or after a life estate gives a remainder to 'my own children *then living,*' or 'to my children or the *survivor of them at the death of A.,*' or to my *surviving brothers and sisters,* or *to my surviving nephews,* the conclusion is almost irresistible that the devise of the future interest does not vest at the testator's death, but is contingent upon the

devisees living to acquire the actual possession. The members of the class who are alive at the death of the testator take contingent remainders which vest in possession only in case they survive the life tenant. In other words, only those persons who are alive at the death of the life tenant form the class which is ultimately to possess and enjoy the property to the exclusion of the heirs of those members of the class who have died during the interval between the death of the testator and the death of the life tenant." 2 Underhill on Wills, Sec. 865.

"Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remanderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus on a devise to A. for life, remainder to his children, but if any child dies in the lifetime of A. his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A. for life, remainder to such of his children as survive him, the remainder is contingent." Gray, Rule against Perpetuities, Sec. 108.

It will be unnecessary to comment at length upon the cases cited in support of the above texts, but we may compare the language of the gift or devise in a few of them with the present case where the direction is to convey "to such of the said children as shall then be living (the period referred to being the death of the life tenant or the attainment of majority by the youngest child whichever event occurred later) and to the heirs and legal representatives of any who shall have hereafter deceased." In *Raleigh's Estate*, 206 Pa. 451, the testator, after a trust for the term of his wife's life, directed "that upon the death of my wife, my executors shall divide my entire estate into as many equal proportions as I shall have children living or that should be represented by lawful heirs and * * * Give the youngest child her choice of shares and so on with those living, according to age, and following with the lawful heirs of any deceased child or children, if any such there be." There was a devise of the income during the preceding life estate and the controversy, as here, was between

the widow and the children of a deceased child. In *Delbert's Appeal No. 1*, 83 Pa. 462, there was a devise in trust "to my said daughter Mary for and during all the term of her natural life and after her decease to all her children then living, and the issue of such of them as may be then dead, their heirs and assigns forever, in equal parts, such issue taking, and among themselves equally dividing, such part and share only as their deceased parents would have taken if living."

In *Wilhelm v. Calder*, 102 Ia. 342, 71 N. W. 214, the termination of the trust was upon the happening of the same events as in the case at bar, "at which time the whole of the remaining part of my said estate shall be divided equally between my said children then living, share and share alike, and descend to them in fee simple." There was a provision for the payment of the intermediate income to the children.

In *Thompson v. Ludington*, 104 Mass. 193, there was a devise to the testator's wife during widowhood "and at her decease or marriage then further in trust to divide the same equally to and among such of my children as shall then be living share and share alike; the names of my said children are A., B., C., D. and E., to them and to their heirs and assigns forever." There was no provision for the issue of a deceased child. In *Colby v. Duncan*, 139 Mass. 398, the testator gave to his wife the income of the remainder of his estate during her life, and then provided as follows: "After the decease of my said wife, I give, devise and bequeath all my estate, both real, personal, or mixed, to my children who may then be living, in equal shares, and in case either of them shall have died leaving legal heirs, then such heirs shall be entitled to the share which their deceased father or mother would have been entitled to if living, to hold to them and their respective heirs and assigns forever."

In *Rhode Island Hospital Trust Co. v. Harris*, 20 R. I. 408, the direction to the trustee upon the death of the life tenant was "to pay over and transfer the principal thereof to the children of said W. H. then living, and to the descendants of

any of them who may then have deceased, in equal shares." See also *Price v. Hall*, L. R. 5 Eq. 399; *Festing v. Allen*, 12 M. & W. 279; *Olney v. Hull*, 21 Pick. 311; *Nash v. Nash*, 12 Allen 345; *Smith v. Rice*, 130 Mass. 441; *Brown v. Williams*, 5 R. I. 309; *Andrews v. Rice*, 53 Conn. 566; *Blatchford v. Newberry*, 99 Ill. 11.

In spite of the unanimity and clearness of the above authorities, it must be admitted that there is some conflict of authority upon this question. This, as has now been repeatedly pointed out, arose from Chancellor Kent's endorsement of the statutory definition of vested estates found in the New York Revised Statutes, reading as follows:

"Future estates are either vested or contingent. They are vested, when there is a person in being, who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent, whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain." N. Y. Revised Sts. pt. 2. c. 1, tit. 2, Sec. 13, (previous to amendment of 1896).

Chancellor Kent, in speaking of the sentence relating to vested estates, said this definition "appears to be accurately and fully expressed." 4 Kent Com. 202, and upon this authority the courts of Alabama, New Hampshire, Indiana and Illinois have held remainders of this kind vested. The United States supreme court in *Croxall v. Shererd*, 5 Wall. 268, 288, appears to have followed this line of cases, although a contrary ruling would not have affected the decision. The error in assuming that the New York definition of vested estates corresponds with the common law is pointed out in the notes to all modern editions of Kent's Commentaries, 4 Kent Com. 203, notes, and is discussed in Gray, Rule against Perpetuities, Sec. 107, note, and 24 Enc. Law (2nd Ed.) 400, 401. It cannot be better explained than by quoting the language of a recent Alabama case, following a line of earlier cases on the ground that a rule of property had been established while holding it demonstrable that those cases were wrong on principle.

"The proposition indorsed by Chancellor Kent, and which, mainly because of his approval of it, has misled this court into what we now deem an erroneous position, has a history which goes to show it should not have been received by this and some other courts as a correct exposition of the law. It originated in the Revised Statutes of the state of New York, where it was apparently undertaken, not to declare what should constitute a vested remainder, but to define such remainder as it was supposed to exist at common law. The New York statutes declared that: 'Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate.' And it was with reference to this provision that Chancellor Kent said: 'The definition of a vested remainder in the New York Revised Statutes appears to be accurately and fully expressed.' Now, the legal fact is, whatever may have been the intention of the New York codifiers or legislators to the contrary, that provision, considered by itself, was not a definition of a vested remainder at common law, but was a declaration of what should constitute that estate under the statutory law of New York; and the court of appeals of that state has so decided, holding, in effect, that the statute, by eliminating the personal element from the notion of a vested remainder, has made a vested estate something other and different from anything known to the common law. 20 Am. & Eng. Enc. Law, p. 844; Moore v. Littel, 41 N. Y. 66, 76. The difference between a vested remainder under the statute and at common law lies in the fact that under the statute all members of a class who are in life at any time during the particular estate will take vested remainders, even though the instrument creating the estates nominates those only of such class as shall be in esse when the particular estate falls in to take in remainder at all; for they clearly come within the words of the enactment as persons 'in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate,' while at common law, under such an instrument, those only of the class who should be in life when the precedent estate ceased are entitled to take at all, and as the members of that class who will survive the life tenant cannot be ascertained until the death of such tenant, until that event it is uncertain that any given one of the class

will ever fill the description of the will or deed, and have a right to the estate in remainder; and hence the remainder is contingent pending the particular estate, because, while that continues, the identity of the remainder-man is not and cannot be ascertained and fixed. The difference may be illustrated by the facts in the case of Kumpe v. Coons, 63 Ala. 448, where there was a devise to Mildred A. Barclay for her life, with remainder over, 'after her death, to the children of the said Mildred A. Barclay then living, [and the descendants of any deceased child or children]. Now, it is most clear that the intention here was that none of the children of Mrs. Barclay who should die before she did—who should not be living 'after her death'—should take any estate in the devised land. Under the statute of New York every child of Mrs. Barclay in life while she was tenant of the particular estate would take a vested remainder, though it appear never so clearly that children then in being could not with certainty fill the description of the will, nor meet the intention of the testator, for non constat but that they would die before her estate terminated, and hence might never belong to the only class which is designated to take at all,—children living after her death. But at common law no estate would vest in her children while she survived, because it is essential to vestiture of any title and estate in any person that such person be ascertained and identified, which, in the case put, is impossible so long as the life estate continues,—and a remainder either vests in right during the life estate, or it cannot be a vested remainder at all,— since there is no certainty while she lives that any of her children, or any particular one or more of her children, will survive her, and fill the description of the will of 'children living after her death,' who only are to take any estate under that instrument." *Smaw v. Young*, 109 Ala. 528, 20 So. 370.

The opinion also points out that devises in the language we are considering, while fulfilling the requirements of vested estates under the New York statute as construed by the courts, are equally within the definition of contingent estates in the same section. This seems to have been discovered at an early date in New York (*Coster v. Lorillard*, 14 Wend. 265, 302) and there is a marked tendency in recent New York cases to construe such devises as contingent remainders, drawing the common law distinction between a remainder to children as

a class and one to such children as the life tenant may leave at his death. *Purdy v. Hayt,* 92 N. Y. 446; *McGillis v. McGillis,* 154 N. Y. 532; *Hall v. La France Fire Engine Co.,* 158 N. Y. 570.

One further difficulty, however, remains in the way of the claim of the defendant Mrs. Davis in the case at bar. Her counsel have argued that the interest of Charles L. Carter was "vested," and have assumed that this was all that was necessary to establish the right of the devisee under his will. This by no means follows. It is true that the word "vested" is often used as equivalent to "transmissible," but this is a secondary and somewhat confusing use. Gray, Rule against Perpetuities, Sec. 118. Even those courts which have followed the New York statutory definition of vested remainders admit the possibility of the "vested" remainder being "divested" or "defeated" by the failure of the remainderman to fulfil the requisite condition which should bring him within the designated class. In such a case a devisee would not take. See *Moore v. Littel,* 41 N. Y. 66; *Croxall v. Shererd,* 5 Wall. 268, 288; *Smaw v. Young,* supra. Indeed it has been suggested that the only effect of the statutory vesting upon otherwise contingent remainders is to render them alienable inter vivos, and possibly to render them indestructible. 20 Harv. Law. Rev. 192, 195.

The difference between the effect of the statutory "vesting" and the attributes of a vested remainder at common law is discussed in a recent case in Wisconsin, where the New York statute has been enacted. The court says:

"We entertain the view that the term 'vested' is used in Sec. 2037 in a much broader and far different sense than that of the common law. The latter comprehends not a mere right to a class to take in the future, which may be defeated as to any member thereof upon his death happening before the arrival of the period for taking in fact, but a condition of the title in praesenti, in that it is presently vested in point of fact as well as right in the remainder-man in being, the enjoyment only being postponed until the happening of some specified

contingency. Under the statute a class of persons having mere possibilities in respect to being clothed with the title in fee, upon the termination, in their lifetime, of a precedent life estate, so long as they possess the entire right to take in remainder enabling them, by presently joining with the life tenant, to convey the whole title, are possessed of vested interests in the eye of the law, though they have no title presently, strictly so called, at all, and a nonsurvivor to the time for enjoyment to commence will never acquire any such title.

"Sec. 2037, Id., has nothing to do, necessarily, with the question of vesting in a common-law sense, in the sense material to the question of whether there is an actual taking of the title in remainder upon the death of the testator under the same or similar circumstances to those of this case, that will preserve such title as to each of the remaindermen or in his line. The statute cited, with its accompanying provisions, deals mainly with limitations upon the right to absolutely suspend the power of alienation. For that purpose mere possessors of possibilities as to receiving a fee title are deemed by the fiction of the law, so to speak, to have present vested estates, if conditions be such that they may, by joining with the person or persons presently enjoying the property, convey it absolutely. It must be plain that where such is the case, in respect to a devise of an estate to be divided between members of a class who may survive until the expiration of a precedent life estate, no member of the class takes title, strictly speaking, during such precedent period. The right of each is dependent upon his surviving until the period for taking and distribution arrives. It is wholly contingent by the common law, though plainly vested by our statute, Sec. 2037, and contingent as well." *In re Moran's Will,* 118 Wis. 177, 184.

The fact that there is a gift to the heirs and legal representatives of such children as shall die before the termination of the trust cannot enlarge the class described, but, rather, furnishes a reason why we should not strain the language of the trust deed in order to accomplish the desirable result described in *Duffield v. Duffield,* supra, of providing for those for whom the testator has omitted to provide through presumed inadvertence. In the absence of such an alternative provision courts sometimes go to extreme lengths in raising implications

in favor of the forgotten class. A good example of this is the case of *Linton v. Laycock,* 33 O. St. .128, relied upon by counsel for Mrs. Davis, in which a devise, at the attainment of majority of the youngest child to "all of my children then living or their heirs," was held to vest an indefeasible title in the children then dead. The court had no difficulty in finding that the pronoun "their" had for its antecedent not the living children in the phrase immediately preceding it, but "children in the mind of the testator not expressed," that is, dead children. It would be interesting to conjecture whether the same rule of grammatical construction would have been applied had the word "living" been "married," so that a devise to "all of my children then married or their heirs" would have been held to have vested an indefeasible fee simple in the unmarried ones.

We believe *Linton v. Laycock* to be opposed to the great weight of authority above cited, but were it necessary to distinguish it from the case at bar it could be easily done. After construing the phrase "or their heirs" to refer to the unexpressed dead instead of the expressed living, the court says:

"Nor was it designated to create thereby a new class of beneficiaries, but to recognize the right of inheritance to his estate from any of his children who might then be dead—that is to say, in case of the death of one of his children his share was not to go to the survivors, but to be considered as if inherited by the heir of the deceased, for the word 'heirs' unless the contrary plainly appears, is a word of limitation and not of purchase, nor can it be changed from its proper meaning as importing inheritance, to defeat the vesting of an estate, unless it was clearly intended by the testator to use it as a word of purchase designating a new class of beneficiaries. We think it was not so used in this will." *Linton v. Laycock,* 33 O. St. 128 at 136.

This language is obviously inapplicable to the case at bar, where the words "heirs" and "legal representatives" do designate a new class of beneficiaries, as is shown by the direction as to how this class shall take among themselves, that is, per stirpes and not per capita.

The words "legal representatives" seem to have been introduced into the trust deed with a view to providing for the event of the real estate having been converted into personalty by sale in accordance with prior provisions, in spite of the fact that under our statute both realty and personalty descend to the heirs of an intestate in the same manner. Words applicable to personalty at common law are not inappropriate, for the real estate still descends to the heir directly while the personalty is administered and then distributed by the executor or administrator. It is true that the words "legal representatives" primarily mean executors and administrators, but the cases are numerous in which they have been held to be shown by the context to mean "heirs," 18 Enc. of L. 818, or "next of kin." 18 Enc. of L. 819. And in the case of *Atherton v. Crowther,* 19 Beav. 448, the same direction found in this case, that the personal representatives should take per stirpes, is held sufficient to show that the words were not used in their primary meaning of executors and administrators. On the other hand, the term is not broad enough to include the devisee of a deceased child. *Bowen v. Hackney,* 136 N. C. 187, 67 L. R. A. 440.

It is true that the word "heirs" is primarily a word of limitation and not of purchase, though any presumption in favor of the first use would necessarily be much weaker in those jurisdictions in which the Rule in Shelley's Case is not law than in those in which that rule is in force. A devise to A for the term of his natural life and after his death to his heirs would in this jurisdiction give the remainder to the heirs as a designated class as purchasers, *Thurston v Allen,* 8 Haw. 392, while under the Rule in Shelley's Case it would be held to be a word describing the particular estate taken by the person named immediately preceding.

In the trust deed under consideration, however, the gift immediately preceding is to "children then living," and it would not help the devisee of Charles L. Carter to hold that the word "heirs" is a word of limitation denoting the estate

which this class should take. What is wanted is a construction that the word "heirs" operates as a word of limitation in respect to a deceased child, in other words, that the gift to the heirs of a deceased child is equivalent to the gift to such child and his heirs. This would be equivalent to holding that a gift to the heirs of A, A being dead, was the same as a gift to A and his heirs, which would be unwarranted. We think it clear that the direction to convey "to the heirs and legal representatives of any (children) who shall have hereafter deceased" is a direction to convey to such persons as would have inherited from the deceased child had he died intestate. *Carter v. Carter,* 10 Haw. 687.

It is urged that the provision for the payment of income to the children upon certain contingencies which never happened, that is, the death of the life tenant before the youngest child had attained majority and the written request of the guardian for such payment, showed an intention that the remainder should be vested. Undoubtedly if the gift had been to all the children this would have been a circumstance in favor of the construction contended for, but the same distinction is to be observed where the first gift is not to the whole class of children but to the restricted classes of children then living and heirs of a deceased child. The intermediate disposition of the income can be considered in construing a gift which has been made but cannot create a new one.

"The distinction drawn in *Bull v. Pritchard* between a gift to a class if or when they attain a specified age, and a gift to such of a class as attain a specified age has been fully recognized in subsequent cases; and gifts over, and gifts of intermediate interest, which have been held to vest a bequest of the first kind in all the members of the class immediately, will generally, where the bequest is in the latter form, be treated not as enlarging the class, but only as regulating the mode or conditions in or upon which the members of it are to enjoy the bequest." 1 Jarman on Wills, 860.

Finally, there has been a great deal of argument based upon matters of expediency, and particular stress has been laid upon

the fact that under the construction adopted by the court the share of one child might vest at thirty, the share of another child at twenty, or the share of the same children might vest at different times according to the happening of various contingencies. It is true that the period of the termination of the trust is necessarily uncertain, being determined in the contingency which actually occurred by the death of the life tenant and in other possible contingencies by the time of the death of minor children. But we see nothing irrational or inequitable in the scheme from this circumstance. Those who frame trusts like this usually have in mind the actual enjoyment rather than the technical ownership of the property. The plan of the trust deed was to keep the property in the hands of the trustee as long as it was to be used as a home for Sybil Augusta Carter or any of her minor children and whenever the time might occur that it should be no longer needed for this purpose it was to be conveyed to the children then living with suitable provision for the heirs of those who had died meantime. In the events which have happened, and so far as we can see in any possible events which might have happened, the trust deed seems to have fulfilled its purpose admirably.

The trustee is directed to convey the premises now in controversy to the minor children of Charles L. Carter.

*A. G. M. Robertson* for plaintiff.

*C. H. Olson* (*Holmes & Stanley on the brief*) for Mary H. S. Davis.

*A. F. Judd* for the guardian of the minor children.