## OLIVER H. KUPAU *v.* WAIAHOLE WATER COMPANY, LIMITED.

### No. 2593.

ARGUED SEPTEMBER 24, 1945.          DECIDED NOVEMBER 8, 1945.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

After trial, jury waived, of appellant's action to quiet title to a portion of certain lands, the trial judge denied appellant's claim and confirmed that of appellee, whereupon appellant excepted to the judge's decision and judgment.

The pertinent facts are undisputed. The original grantor, Sylvester Cullen, had two sons, Sylvester, Jr., and James. By deed in 1885 for the consideration of one dollar and natural love and affection he "granted, bargained and sold" to them as cograntee parties the certain lands, together with *inter alia* "all the estate, right, title, interest, property possession, claim and demand whatsoever of * * * [the grantor] either in law or in equity, of, in and to the * * * granted premises and every part and parcel thereof." The deed contains a habendum clause "TO HAVE AND TO HOLD * * * unto them * * * [the cograntees] for and during the term of their natural lives; and from and after the death of both * * * unto the heirs of their bodies in equal shares; but should * * * [they] decease without leaving heirs, begotten of their bodies; then and in such case, the estate hereby granted shall revert unto my heirs at law." The record is silent as to the ages of the sons and whether either had children *in esse* at the time of the execution of the deed.

In 1919 cograntee Sylvester, Jr., died leaving three children, one being Sylvester III.

In 1922 Sylvester III deeded to appellee an undivided one-sixth interest in the land, each of the other two children of Sylvester, Jr., subsequently deeding to appellee a like interest.

In 1924 Sylvester III died, the record not disclosing whether he left issue.

In 1933 cograntee James died leaving three children, who each prior thereto had conveyed a one-sixth interest to appellee.

In 1934 one of the children of James deeded by quitclaim all right, title and interest in the land to appellant. In 1937 and 1941, respectively, the two surviving children of Sylvester, Jr., did likewise.

The only part of the title in issue is the one-sixth undivided interest described in the deed of Sylvester III, appellant conceding that appellee has good title to five-sixths. The appellant claims a three-fifths portion of such one-sixth by virtue of the three quitclaim deeds. Appellee's claim is for the entire one-sixth interest, based upon the Sylvester III deed.

Both claims stem from the deed of 1885 and depend for efficacy upon the character of the interests in remainder of the children of Sylvester, Jr., after his death, the basic issue presented being whether Sylvester III conveyed to appellee a vested interest or one contingent upon Sylvester III surviving his uncle, James. Appellant asserts it was so contingent and that by predeceasing his uncle the conveyed interest was defeated in the hands of the appellee, that it became vested in the five surviving children on the death of James as an acquired interest in addition to those already conveyed to appellee and that three fifths of it was later effectively quitclaimed to appellant. Appellee asserts that it became an indefeasible vested interest of Sylvester III and incapable of being defeated after his father's death, that the surviving chil-

dren acquired no additional interest and hence the quitclaims conveyed nothing. The trial judge sustained the appellee's assertion and this court reaches the same result.

The granting clause is general, as well as are the recitals of the deed, containing no words of limitation or setting forth the character of the estates created and intended to be created, whereas the habendum is specific, expressing limitations descriptive thereof. The habendum therefore controls in explaining and qualifying such estates, the deed from the relationship of its parties and from its four corners being an absolute conveyance of the title to the lands and in the nature of a family settlement by the grantor upon his sons for their lives with fee simple remainder over to the heirs of their bodies, but whether the estate in remainder of the body heirs of the son first to die is a vested one after his death or contingent upon the death of his brother is obscured by ambiguities throughout the habendum. These ambiguities are all of the same nature, each having a direct bearing upon the basic issue presented, and intrinsically due to the dealing by the language with separate and distinct subjects as if they were one and the same. This is exemplified by the controlling phrases of the habendum, *i. e.*, "*the term* of their natural lives," "*the death* of both," "*the heirs* of their bodies," "*heirs, begotten* of their bodies," and "*the estate* hereby granted." There is nothing in the deed upon which to resolve such ambiguities and therefore the habendum itself is ambiguous and susceptible to two constructions—one of joint import and the other of several. To construe its language to be of joint import literally and strictly according to exact connotation of its phrases not only would be unreasonable but would frustrate the paramount intention of the grantor, which was to make a valid conveyance of fee simple, and reach the absurd result that he expected not only the remainder estate to be created at a time which

in all probability would never occur, but also to be vested in persons who could not possibly come into existence, it being improbable that his sons would die simultaneously and impossible for them to procreate heirs from their joint bodies.

The deed being incapable of operating in its literal and strict form, it must be made to operate in one which by law will effectuate an intention founded upon reason and common sense. (See *Goodtitle ex dim. Edwards* v. *Bailey*, Cowp. pt. 2, 597, 98 Eng. Rep. 1260, 11 Eng. Rul. Cas. 48, 14 Eng. Rul. Cas. 795.) Consequently, the literal and strict must give way to the liberal and broad in carrying out the intent of the grantor. This the appellant recognizes. He urges in effect that the phrase "unto them * * * for and during the term of their natural lives" be construed as creating a life estate in joint tenancy, the phrase "from and after the death of both" to mean "from and after the death of the *survivor*," which in itself admits that one death would be antecedent to the other, and the phrase "the estate hereby granted" to refer to the remainder estate in fee simple. This forms a construction which remains essentially one of joint import albeit not altogether literal and strict. It does not purport, however, to apply to the entire language. By reason of the necessity of not construing the remaindermen to be the heirs procreated from the joint bodies of the life tenants, it cannot be applied to that portion and appellant is forced to accept in part the construction of several import that the remaindermen would be "the heirs or heirs begotten of their *respective* bodies." On the other hand the appellee insists in effect that such is but a compromise which unreasonably attempts to settle one ambiguity by two different methods. It urges that the construction of several import must be applied consistently to the language as a whole. The appellant and appellee are thus in substantial

agreement that the construction of several import and not the one of joint should be applied to that portion relative to remaindermen but in sharp disagreement as to which construction should be applied to those portions affecting the character of estate or estates created and to be created in so far as such is determinative of succession of remainder and sequence of takers.

Under the construction of joint import as combined with the one of several, the appellant contends that the habendum would create a life estate in joint tenancy with the entire fee simple remainder over to the heirs of the bodies of each cotenant which would vest in them immediately upon the death of the survivor, the body heirs to be then identified and ascertained and to take as one class in equal shares. Such a combination, although circumventing the exact connotations concerning the improbable and the impossible, in our opinion does not afford a proper reconciliation between the different portions of the language to which the two constructions have been applied alternately. This is evinced by a repugnancy of meaning, the construction of joint import making the death of one ancestor the pivotal point of succession of remainder to his body heirs as well as those of the other ancestor who predeceased him, whereas the one of several tends to make the death of each ancestor the pivotal point of succession to his particular body heirs as reasonably may be inferred from the implications attendant upon the very definition of the word "heirs" when employed as being possessed respectively by living persons. The combination, therefore, does not serve to establish the succession of remainder and sequence of takers but rather accentuates the ambiguity pertaining thereto, the reason being that the two constructions are wholly antagonistic to each other. They cannot stand together nor be partially applied to portions of the same language so as to resolve such am-

biguity. Thus there being no middle ground, no alternative is presented except to adopt one and reject the other. Unquestionably the one to be adopted is the construction of several import if for no other reason than that it can be applied consistently to the entire language and necessarily must be applied to a portion thereof in order to avoid the evils of construing the phrase "the heirs of their bodies" to mean "heirs procreated from their joint bodies," it being incumbent upon the court to construe the habendum as a whole, maintain whatever coherency its language possesses and give its every word and part where possible that harmony of meaning which the more effectually will carry out the intention of the parties. There are, however, other reasons why the construction of several import should be adopted, the construction of joint import appearing to be contrary to the intention of the grantor and counteracted by well-recognized rules of construction, whereas the one of several is consonant to both.

The construction of several import effects a segregation of the separate and distinct subjects with which the language deals ambiguously. This is accomplished by construing the habendum to read: "To have and to hold unto * * * [the two cograntees] for and during the *respective terms* of their natural lives; and from and after the death of *each* * * * unto the heirs of their *respective* bodies in equal shares, but should * * * *one or both* of the *cograntees* decease without leaving heirs begotten of *his body* or their *respective* bodies; then and in such case *or cases* the estate *or estates* hereby granted shall revert to my heirs at law." (See *Horne* v. *Horne*, 181 Va. 685, 26 S. E. [2d] 80; *Putnam & others* v. *Gleason*, 99 Mass. 454.) Consistent with the language so clarified the deed does not employ any words of survivorship between either the first or the second takers, nor does its tenor indicate whatsoever an intention to create a life or remainder estate in

joint tenancy. Consequently, the deed must be construed as creating, both immediately and ultimately, conventional estates in common, each though in unity of possession with the other, having a separate and distinct moiety or title of its own. Such in the opinion of this court reflects the purport of the deed and is in accordance with the judicial rule of construction early adopted by this court, since made statutory, that unless there is a manifest intent to the contrary every conveyance to two or more persons must be construed as creating estates in common and not in joint tenancy or by entirety. (See *Awa* v. *Horner*, 5 Haw. 543; R. L. H. 1945, § 12780.) The deed so construed is bilateral in the sense that it preserves throughout separate and distinct moieties or titles to two undivided one-half interests in the lands, each life estate in common on termination to be replaced by a fee-simple remainder estate in common and each life tenant on death succeeded by his body heirs. Two remainder estates in common ultimately were to be successively created, each to be synchronous to one set of body heirs of a definite ancestor. In other words, two groups of remaindermen were contemplated, each to take an undivided one-half interest in fee simple on the death of the respective ancestor of its members. Thus on the death of the first cograntee to die his life estate in common and moiety would terminate and immediately be replaced by a substitutional fee-simple remainder estate in his body heirs to be then identified and ascertained. They would take such estate in equal shares and hold as tenants in common among themselves and with the survivor cograntee, whose estate and moiety would subsequently terminate and be replaced in like manner at his death so that his body heirs would hold half of the lands as tenants in common among themselves and with those of his predeceased brother as to the other half, the seizin of each set of body heirs being by purchase

rather than by inheritance and hence the members take *per stirpes* in the sense that their estate substitutes for that of their ancestor and not *per capita* in the sense that each member of both sets share equally in the remainder as a whole, even though the number of members of each set should be unequal. (See *Horne* v. *Horne, supra*; *Wright* v. *Gaskill et al.* [N. J.], 72 Atl. 108.) The nature of such seizin may be better illustrated by the language found in 2 Jarman on Wills (6th ed.), pages 207, 208: "This question often arises upon devises or bequests to two or more persons for their lives, with remainder to their children. The conclusion then depends in a great measure upon whether the tenants for life take jointly or as tenants in common. If the latter, then, as the share of any one will, on his decease, go over immediately, without waiting for the other shares, it is probable that the testator intended it to continue separate and distinct from the other shares, and consequently, to devolve on the children per stirpes."

The habendum did not limit the remainder estates to definite and ascertained persons but rather to persons of dubious identity who could not be ascertained while their respective ancestor who held the preceding estate remained alive. Hence the estate of the body heirs of the cograntee first to die, as well as that of those of the last to die, was not an estate *in praesenti* at the time of the execution of the deed. However, it became a substitutional fee-simple estate to the vested life estate it replaced on the latter's termination and vested in the body heirs of the cograntee first to die *eo instante* upon his death when they for the first time answered the description of the estate's limitation, such being the condition precedent to its vesting and the law favoring early and immediate vesting of estates unless the interests therein are manifestly contingent. (See *Estate of Isenberg*, 28 Haw. 590; *Norman* v. *Horton*,

344 Mo. 290, 126 S. W. [2d] 187; 31 C. J. S. § 83, p. 96; 33 Am. Jur. § 102, p. 558.) No intent is manifested anywhere within the deed that such remainder estate would be contingent upon the death of the last cotenant to die or conditioned upon the subsequent termination of the life estate of the survivor cotenant. On the contrary, the deed's nature as a family settlement by the grantor for the primary benefit of his sons and their respective body heirs, coupled with his apparent attempt to create estates tail general, is indicative of an intent that it would vest immediately upon the death of the son first to die in his body heirs then identifiable and ascertainable.

Estates in tail do not exist nor can they be created in Hawaii. (See *Rooke* v. *Queen's Hospital*, 12 Haw. 375.) A conveyance, which at common law would be one of fee tail is deemed in this jurisdiction to be one of fee simple where the words "the heirs of the body" are construed in their technical sense to be ones of limitation (see *Kinney* v. *Oahu Sugar Co.*, 23 Haw. 747) or a conveyance creating a life estate, when the intent to do so is clear, with grant of fee-simple remainder where the words are construed as ones of purchase and description, the rule in *Shelley's* case having no force in Hawaii (see *Thurston* v. *Allen*, 8 Haw. 392; *Evans* v. *Bishop Trust Co.*, 21 Haw. 74), according to their ordinary and plain sense of natural children or lineal descendants in contradistinction to adopted children or statutory and collateral heirs (see *Nahaolelua* v. *Heen*, 20 Haw. 372). An attempt in one deed to convey estates in fee tail general to two ancestors, which by limitation is for their natural lives and over by purchase to their respective body heirs, is construed to be a carving out of two estates for the life only of each ancestor from grants of fee simple to such body heirs. Nevertheless, the attempt carries with it the common-law conception that estates tail are ones of inheritance in so far as such by

implication indicate an intention of the grantor that the remainder estate of the body heirs of the ancestor who dies first shall vest by purchase in fee simple to them immediately upon his death and that they should not be kept from the enjoyment of its possession and title until the other who is not their ancestor should die sometime in the unforeseeable future.

Upon analysis, no matter by which angle the approach be made, the intention of the parties may be ascertained reasonably from the construction of several import. Unlike the divergent one of joint import, it not only applies throughout and unites each part of the deed into a harmonious whole consistent with its nature as a family settlement, but also effectively resolves the ambiguity of succession of remainder and sequence of takers, consonant with well-recognized rules of construction. In our opinion, it provides the only feasible method of effectuating the intention of the parties and therefore is adopted, it not being precluded by any rule of positive law. Had Sylvester, Jr., died without leaving heirs of his body, the heirs at law of the grantor then identifiable and ascertainable would immediately take as substitutional remaindermen a conventional reversion estate in common of a fee-simple undivided one-half vested interest in the lands, the only opportunity in such case for James to share therein being in the capacity of reversioner or heir of the grantor. (See *Snell* v. *Scarboro*, 162 Ga. 731, 135 S. E. 76.) However, both cograntees died leaving all their body children living, which renders the provision for conventional reversion estates in common inoperative.

It should be observed in closing that neither the character of interests in remainder of the children of Sylvester, Jr., as to whether those interests were vested or contingent while he was living nor, if contingent, the locus of the fee during the period of contingency is before this court. It

has assiduously refrained as far as possible from discussing either. (Consult *Carter* v. *Davis*, 18 Haw. 439, for an exhaustive treatment of the subject of contingent remainders, and *Auld* v. *Andrade*, 31 Haw. 1; see *Rosenbledt* v. *Wodehouse*, 25 Haw. 561; also 33 Am. Jur. § 72, p. 532.) The final result at which this court arrives is that Sylvester III after his father's death clearly had an indefeasible vested interest in remainder, not a mere expectancy defeated by his predeceasing his uncle, James, as contended by appellant. This vested interest, therefore, together with those of equal quantum of the other children of Sylvester, Jr., was validly conveyed to appellee, the three children having been substituted in fee for their father's moiety with the right to immediate possession of a one-sixth undivided interest each as tenants in common among themselves and with their uncle, James, as the holder of the remaining moiety. Hence the title to the interest described in Sylvester III's deed is in the appellee by virtue of that deed, and no interest, additional to those already conveyed to appellee, was acquired by the surviving children, which renders the subsequent quitclaim deeds ineffective and appellant's claim untenable.

The position taken by appellee is substantially affirmed, except that it contends that the habendum should be further construed as making the estates to the cograntees into ones for their own lives and that of the survivor so that Sylvester, Jr., died seized of an estate *per autre vie* or during the life of his brother James, and that after the death of Sylvester, Jr., his (Sylvester, Jr.'s) children had a vested fee-simple estate in remainder but were prevented from enjoying actual possession until the death of James. It also contends in support of the thesis of Sylvester III's vested interest that the child of James who quitclaimed to appellant is estopped under the doctrine of *res judicata* from asserting that Sylvester III had an interest con-

tingent upon his surviving his uncle by reason of having been a party in an equity proceeding to enjoin the appellee from making use of certain tunnels. Determination of these contentions are patently not essential to the result of this opinion, the first being academic and the second subordinate. However, having been made, they briefly will be considered.

The first contention runs counter to the purport of the deed in conveying the lands to benefit not only the grantor's named sons but also the body heirs of each, actual enjoyment of possession being one of the benefits contemplated and it being probable that the grantor had in mind the actual and immediate enjoyment rather than technical ownership of the property conveyed. (See *Estate of Isenberg, supra.*) Under the construction as contended it is evident, from the character of an estate *per autre vie*, that James would become the *cestui que vie* of the estate of which Sylvester, Jr., died seized and that neither they nor their children would have the benefit of actual enjoyment of possession after the death of Sylvester, Jr., and before that of James, but that it might have rested in an assignee of Sylvester, Jr. In the absence of such alienation, whether the common law prevails that any person might enter by right of occupation upon the land at the death of the tenant *per autre vie* who dies during the lifetime of the *cestui que vie* (see 2 Bl. Comm. 258, 259; 4 Kent's Comm., Lect. LV, 26, 27) or whether the wife and family or next of kin of the deceased tenant *per autre vie* are entitled to continue in possession during the remainder of the life of the *cestui que vie* (see *Hopewell* v. *Patterson* [Tex. Civ. App.], 36 S. W. 319) need not be decided, such not being determinative of the basic issue presented. Suffice it to say that there is no statute in this jurisdiction regulating occupancy of the residue of an estate *per autre vie* and that the further construction for

which appellee contends denies to the children of Sylvester, Jr., upon his death the actual and immediate enjoyment of possession to which they by purchase are entitled under the construction of several import. This in itself tends to negative any intent to create an estate *per autre vie*. Furthermore, no provisions or appropriate words expressive of such an intention and none clearly bringing into existence an estate *per autre vie* or any of its incidents are to be found in the deed. Consequently, the deed should not be construed as doing so. For these reasons the further construction is without merit, Sylvester, Jr., not having been a tenant *per autre vie* but rather one for his life only.

An examination of the record of the proceedings in equity reveals the appellee's second contention to be untenable. The equity court did not have before it the issue whether the interest in remainder conveyed by Sylvester III was an indefeasibly vested one or after his father's death remained contingent upon surviving his uncle nor was determination necessary to its adjudication. Hence its finding that the present appellee is "the owner in fee simple of the remainder interest of the children of Sylvester, Jr." was *obiter dictum* and as such insufficient as a basis upon which to predicate the doctrine of *res judicata*.

Decision and judgment below affirmed.

*P. Cass* (*Cass & Silver* on the brief) for plaintiff-appellant.

*A. G. M. Robertson* (*Robertson, Castle & Anthony* on the brief) for defendant-appellee.